644 P.2d 535

**Phillip DIBBLE, Plaintiff-Appellant,**

**v.**

**Lawrence A. GARCIA, J. J. & L. Corporation, Garcia Properties and Ramon L. Stright, Employers, and Transamerica Insurance Company, Insurer, Defendants-Appellees.**

**No. 5247.**

Court of Appeals of New Mexico.

Feb. 16, 1982.

Certiorari Denied April 16, 1982.

Louis Marjon, Albuquerque, for plaintiff-appellant.

Kathleen Davison Lebeck, Civerolo, Hansen & Wolf, P. A., Albuquerque, for defendants-appellees.

## OPINION

LOPEZ, Judge.

The plaintiff appeals an adverse judgment in a workmen's compensation case. We affirm.

The decisive issue on appeal is whether the trial court erred in finding and concluding that plaintiff was an independent contractor.

The trial court found that the plaintiff suffered an accidental injury arising out of and in the course of his work for the defendant J.J. & L. This finding is not challenged by the plaintiff so it becomes a fact of the case on appeal.

The trial court found that the plaintiff was an independent contractor and was not covered under the Workmen's Compensation Act. The plaintiff challenges the following findings of fact:

2. The relationship of Plaintiff and Defendant, J.J. & L. was that of contractor and subcontractor, the Plaintiff being the subcontractor.

3. J.J. & L. contracted with the Plaintiff to do the framing work on a square foot rate; J.J. & L. exercised no control over the persons doing the actual work, nor over the work itself, except for a superintending control through Stright. The Plaintiff had control of who would do the work, when, how and what the workers would be paid, and Plaintiff could hire, fire, and substitute the workers at will.

4. The Defendant Stright was an agent of J.J. & L. and had a subcontract to do the framing work on the house being built by J.J. & L.

5. J.J. & L., acting through Stright, failed to inquire of Plaintiff as to whether the Plaintiff was a licensed contractor, and actually avoided the issue in order not to learn whether the Plaintiff was licensed.

6. In relation to J.J. & L. the Plaintiff was an independent contractor.

The Plaintiff claims that the above findings are not supported by the evidence. He also argues that the trial court erred in denying his 71 requested findings of fact.

We review all the evidence in the record in the light most favorable to the prevailing party, and if there is substantial evidence to support the findings, they will not be set aside. *Den-Gar Enterprises v. Romero*, 94 N.M. 425, 611 P.2d 1119 (Ct. App.1980); *Young v. Signal Oilfield Service, Inc.*, 81 N.M. 67, 463 P.2d 43 (Ct.App.

1969); *Lopez v. Schultz & Lindsay Construction Co.*, 79 N.M. 485, 444 P.2d 996 (Ct.App.1968); *Geeslin v. Goodno, Inc.*, 75 N.M. 174, 402 P.2d 156 (1965); *Mascarenas v. Kennedy*, 74 N.M. 665, 397 P.2d 312 (1964); *Yates v. Matthews*, 71 N.M. 451, 379 P.2d 44 (1963).

The New Mexico Workmen's Compensation Act provides that an employee has the right to compensation for injuries arising out of and in the course of his employment, § 52–1–9, N.M.S.A.1978, and defines a workman as "any person who has entered into the employment of or works under contract of service or apprenticeship, with an employer...." § 52–1–16, N.M.S.A.1978. To obtain benefits under the act, the plaintiff has the burden of establishing that he is an employee. *Perea v. Board of Torrance County Commissioners*, 77 N.M. 543, 425 P.2d 308 (1967).

The relationship between the plaintiff and J.J. & L. is a question of law to be determined by the court from the facts. *Roybal v. Bates Lumber Co.*, 76 N.M. 127, 412 P.2d 555 (1966).

Our appellate courts have established the following principles of law to guide us in determining the issue on appeal. 1. The words "employer and employee" as used in the Workmen's Compensation Act are used in their natural sense and are intended to describe the conventional relationship between an employer who pays wages to an employee for his labor. *Burton v. Crawford and Company*, 89 N.M. 436, 553 P.2d 716 (Ct.App.1976). 2. The right to employ and discharge at will is a test considered in the creation of employer-employee relationship. *Burton v. Crawford, supra.* The right to control is also a test for determining an employer-employee relationship. *Roybal v. Bates, supra.* 4. The "relative nature of the work" test is another method for determining the relationship of the claimant and J.J. & L. *Burton v. Crawford, supra.*

1. *The conventional relationship between the plaintiff and J.J. & L.*

██ This principle applies where it is necessary to determine whether the claimant has earned wages in order to come within the Workmen's Compensation Act. It is very evident and clear that plaintiff was not paid wages. Lawrence Garcia, architect and contractor is the owner of Garcias Properties dba J.J. & L., Inc. Garcia planned the Alamogordo project for the construction of homes by estimating costs of all subcontracts on his project. All of the construction on the project was then subcontracted to various independent contractors for painting, plumbing, roofing, framing, dry wall and insulation. The defendant Stright is shown as the framing subcontractor on the ledgers of J.J. & L. Stright was paid by Garcia for the framing subcontract. No payroll checks were issued by Garcia or J.J. & L. to the plaintiff and no social security was withheld from any subcontractor, including the plaintiff. The subcontractors were paid the contract price after the work was completed. In the case of the framing subcontract, Stright was paid 90 cents a square foot for framing. Then Stright in turn subcontracted the framing work to the plaintiff at 85 cents per square foot as lump sum contract. Stright had been approached to run the project and wanted to subcontract the framing at 85 cents per square foot. Stright was not aware that plaintiff did not have a contractor's license. He considered the plaintiff a subcontractor because all work on the project was done by subcontractors who were paid a lump sum contract price for their portion of the job, and because the plaintiff held himself out as willing to subcontract the work at 85 cents per square foot cash. None of the subcontractors, including plaintiff, were paid payroll checks made for withholding tax and social security. After the work was finished, plaintiff was paid a lump sum by Stright from Stright's own account. It is evident that plaintiff was not paid wages but rather was paid on a contractual basis. Under this test, the evidence is substantial that the plaintiff was an independent contractor and not an employee. *Burton v. Crawford, supra.*

2. *The right to control test.*

██ Garcia, acting for J.J. & L. never hired plaintiff, never saw him or his crew, and never even knew of his existence until after this suit was filed. Garcia had no authority to hire or fire plaintiff or his crew. Garcia subcontracted to Stright, and Stright then subcontracted to Dibble. Factors to be considered in determining whether the right to control exists are: 1. the right or exercise of control of the details of the work, 2. the method of payment, 3. the furnishing of equipment and 4. the right to fire. *Burton v. Crawford, supra; Perea v. Bd. of Torrance County Commissioners, supra.*

██ In this case the evidence in the record is very clear that J.J. & L., through Garcia, did not control the details of the work being done by the plaintiff or his crew. The plaintiff, who had been a carpenter for about eight years, hired his own crew, could fire them, determine how much each was to be paid, and paid them. Stright was never aware how plaintiff paid his crew. Plaintiff supervised his crew's work, although Stright was responsible for the general supervision of the framing. The general supervision of the subcontractor does not transform the independent contractor into an employee. *Roybal v. Bates, supra.* There is evidence that Garcia, acting for J.J. & L., would supervise or inspect the final results of a framing project. However, this final supervision or inspection is not inconsistent with the status of an independent contractor. *Roybal v. Bates, supra.* Where the control is limited to the ultimate results to be achieved under the contract, the relationship is usually that of an independent contractor. *Burruss v. B. M. C. Logging Co.,* 38 N.M. 254, 31 P.2d 263 (1934); *Roybal v. Bates Lumber Co., supra.*

██ We have already determined that the method of payment was by contract rather than by wages. The plaintiff also owned and furnished his own equipment.

J.J. & L. had no right to fire the plaintiff and his crew. Therefore, we hold that under this test the plaintiff is an independent contractor.

3. *The right to employ and discharge at will test.*

■ We have already determined that there is substantial evidence that J.J. & L. had no right to hire and fire the plaintiff or his crew, so under this test the plaintiff is an independent contractor. *Burton v. Crawford, supra.*

4. *The relative issue of the work test.*

■ In *Burton v. Crawford, supra,* this court adopted the principle governing a relative nature of the work concept from *Ostrem v. Alaska Workmen's Compensation Board,* 511 P.2d 1061 (Alaska 1973) and from 1A Larson's Workmen's Compensation § 45.00 (1973). This court stated:

> The "relative nature of the work" test has two parts: first, the character of the claimant's work or business; and second, the relationship of the claimant's work or business to the purported employer's business. Larson urges consideration of three factors as to each of these two parts. With reference to the character of claimant's work or business the factors are: (a) the degree of skill involved; (b) the degree to which it is a separate calling or business; and (c) the extent to which it can be expected to carry its own accident burden. The relationship of the claimant's work or business to the proposed employer's business requires consideration of; (a) the extent to which claimant's work is a regular part of the employer's regular work; (b) whether claimant's work is continuous or intermittent; and (c) whether the duration is sufficient to amount to the hiring of continuing services as distinguished from contracting for the completion of the particular job. [511 P.2d at 1063].

The evidence in the record indicated that J.J. & L. subcontracted all of its production process. This included the framing project, which it subcontracted to Stright, and which Stright subcontracted to the plaintiff. Framing is a specialized and skilled area of construction. The plaintiff furnished his own power equipment for the job.

The plaintiff contracted with Stright to do a particular job on a particular project, and when that job was completed, he no longer had any employment in connection with the project. There is substantial evidence in the record to support a finding that the plaintiff was an independent contractor under this test.

■ In urging reversal of the trial court's judgment, the plaintiff argues that the court erred in its denial of his numerous requested findings of fact. He argues that the evidence supports his views. There was some contradiction and conflicting testimony regarding evidentiary facts. However, the duty to weigh the evidence and the credibility of the witnesses, and the duty to resolve conflict in the evidence rests within the province of the trial court and not with the appellate court. *Lopez v. Schultz, supra; Lopez v. Phelps Dodge Corp.,* 83 N.M. 799, 498 P.2d 686 (Ct.App.1972). The fact that there may have been some evidence upon which the court might have found facts other than what it did is not sufficient for reversal. *See Montano v. Saavedra,* 70 N.M. 332, 373 P.2d 824 (1962).

We hold that all the findings of the trial court are supported by substantial evidence and that the findings support the conclusions of the court.

The judgment of the trial court is affirmed.

IT IS SO ORDERED.

SUTIN, J., concurs.

WALTERS, C. J., dissents.

WALTERS, Chief Judge, dissenting.

I respectfully dissent.

Based on mixed and contradictory findings of fact and conclusions of law, denominated "findings," the trial court concluded that Phillip Dibble was an independent con-

tractor hired by J.J. & L., and therefore ineligible for workmen's compensation benefits.

The facts in this case are not unusual. Phillip Dibble and a framing crew he gathered together at the request of defendant Stright, J.J. & L.'s "agent" and "framing subcontractor" (Finding 4), was hired by Stright to do framing work at the rate of approximately eighty cents per square foot. J.J. & L. carried workmen's compensation coverage. Stright supervised the framing work, paid Dibble and his crew from a personal account because he was unable "to get hold of" J.J. & L.'s principal on payday, and paid for the entire amount of framing done by the crew in one check. The amount of the check was divided among the crew.

On the third day of work, plaintiff Dibble suffered an accidental injury on the job and was refused workmen's compensation benefits by Stright and J.J. & L. At trial Dibble claimed he was an employee; Stright and J.J. & L. contended he was a subcontractor and, therefore, an independent contractor who was not entitled to workmen's compensation coverage. The trial court concluded that Dibble was an independent contractor and dismissed his complaint.

The relationship of parties in a workmen's compensation proceeding is not to be determined from the name attached by them to the relationship, but from the consequences which the law imputes to their agreement, to prevent evasion of obligations which the Workmen's Compensation Act imposes on employers. *Yerbich v. Heald*, 89 N.M. 67, 547 P.2d 72 (Ct.App. 1976). The basic purpose of the Act is to insure that industry carry the burden of personal injuries suffered by workmen in the course of their employment. *Yerbich, supra.* In determining whether a person is an employee or an independent contractor, the principal factor to be considered is the right to control. *Burruss v. B. M. C. Logging Co.*, 38 N.M. 254, 31 P.2d 263 (1934). The right to control can be inferred by the type of authority exercised by the employer. In *Burruss, supra*, the court said:

The employee renders personal service. The independent contractor may or may not. In both cases, the employer exercises authority. Beyond doubt the character of such authority or control is the usual and generally accepted test. The result to be achieved by the independent contractor is controlled by the employer. But, when the control descends to the details or to the means and methods of performance, we have a servant or employee. This general test we find variously stated.

. . . .

"The chief consideration which determines one to be an independent contractor is the fact that the employer has no right of control as to the mode of doing the work contracted for." [Citation omitted.]

[A]ll agree, in statement if not in application, that it is the right to control, not the exercise of it, that furnishes the test.

The cases on this question of control agree that facts showing control are (1) control respecting the manner in which the details of the work are to be executed; (2) the right to discharge; and (3) the method of payment. *Yerbich, Burruss, supra.*

In addition to control, a second influencing "ultimate" factor, stated in *Shipman v. Macco Corp.*, 74 N.M. 174, 392 P.2d 9 (1964), is: Whose is the work being done? The court in *Shipman, supra*, quoted from *Jones v. George F. Getty Oil Co.*, 92 F.2d 255 (10th Cir. 1937):

In determining whose work is being done, the question of power to control the work is of great importance, but is not conclusive. [Citations omitted.] The indentity of the person who, in fact, directs the details of the work and gives the immediate instructions to the workmen is of comparatively small importance, the power of control referred to being the power to control the undertaking as a whole. . . .

A third inquiry was made in *Burton v. Crawford & Co.*, 89 N.M. 436, 553 P.2d 716 (Ct.App.1976): What is the relative nature of the work? It was suggested there that

the considerations necessary to answer that question are: (1) the degree of skill involved; (2) the degree to which it is a separate calling or business; and (3) the extent to which it [claimant's work] can be expected to carry its own accident burden.

No findings of fact were made on the latter two questions.

I am unable to agree with the majority reason for the following reasons:

1. Findings 2 and 6 concerning the relationship between J.J. & L. and Dibble are conclusions of law. *Creley v. Western Constructors, Inc.*, 79 N.M. 727, 449 P.2d 329 (1969); *Latta v. Harvey*, 67 N.M. 72, 352 P.2d 649 (1960). The remaining "findings" are inadequate to support such a conclusion. *Board of County Comm'rs of Dona Ana Cty. v. Little*, 74 N.M. 605, 396 P.2d 591 (1964).

2. Power to discharge is a determinative factor, according to *Burruss, supra*. Although there is no finding regarding Stright's power to discharge Dibble, the evidence in the record is that Stright had the power to discharge not only Dibble, but also the members of the crew.

3. Dibble's relationship to other members of the crew is not determinative of Dibble's relationship to J.J. & L. *See Latta v. Harvey, supra*, where the claimant who provided a crew, material, and equipment for well drilling was held to be an employee, not an independent contractor.

4. The trial court and the majority opinion disregard the analysis of Justice Moise in *Shipman v. Macco Corp., supra*, and particularly do they disregard *Shipman's* significant reliance on the manner in which defendant Macco handled employment arrangements with other entities and employees, as opposed to Shipman, as affecting the result reached in that case.

5. The evidence in this case discloses that defendants' arrangement with claimant Dibble was no different from the arrangements with the claimants in *Burruss* and *Shipman, supra*, and the authority of Stright was no different from that retained by the logging company in *Burruss, supra*,

or the construction company in *Shipman, supra*.