1998-NMCA-070

959 P.2d 569

**Jose Ventura BENAVIDEZ, Claimant–Appellant,**

v.

**SIERRA BLANCA MOTORS and John Deere Insurance Co., Employer/Insurer–Appellees.**

No. 18454.

Court of Appeals of New Mexico.

April 24, 1998.

**236**

Warren F. Reynolds, Warren F. Reynolds, P.A., Hobbs, for Appellant.

David L. Skinner, O'Brien, Genova & Skinner, P.C., Albuquerque, for Appellees.

*OPINION*

DONNELLY, Judge.

{1} Claimant Jose Ventura Benavidez appeals from an order of the Workers' Compensation Judge (WCJ) denying workers' compensation benefits, medical benefits, and attorney fees. The principal issue raised on appeal is whether the WCJ erred in determining that Claimant, an inmate in the custody of the New Mexico Department of Corrections who was injured while participating in an inmate work-release program, was eligible for benefits under the New Mexico Workers' Compensation Act. *See* NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 1993) (the Act). For the reasons discussed herein, we reverse.

*FACTS AND PROCEDURAL POSTURE*

{2} This is the second appeal before us involving these parties. Claimant, an inmate at the Roswell Correctional Center (RCC),

filed suit seeking workers' compensation benefits for injuries he sustained while participating in an inmate-release program at Sierra Blanca Motors (Sierra Blanca). Both Claimant and Sierra Blanca filed motions for summary judgment. The WCJ held that Claimant's status as a prisoner precluded his receipt of benefits, and granted summary judgment in favor of Sierra Blanca. In *Benavidez v. Sierra Blanca Motors*, 120 N.M. 837, 907 P.2d 1018 (Ct.App.1995) (*Benavidez I*), aff'd in part & rev'd in part, 1996–NMSC–045, 122 N.M. 209, 922 P.2d 1205, this Court reversed an award of summary judgment as to Sierra Blanca, and concluded as a matter of law that Claimant was Sierra Blanca's employee and therefore was entitled to receive workers' compensation benefits.

{3} The Supreme Court granted *certiorari* to address the question whether a prisoner participating in an inmate-release program who is injured while performing work at a private jobsite may be considered an employee of that private business entitled to workers' compensation benefits under the Act. In *Benavidez v. Sierra Blanca Motors*, 1996–NMSC–045, 122 N.M. 209, 215, 922 P.2d 1205, 1211 (*Benavidez II*), our Supreme Court held that (1) Claimant's "status as an inmate [did] not preclude the existence of an employer-employee relationship [with Sierra Blanca] for the purpose of receiving workers' compensation benefits"; and (2) that resolution of whether Claimant was an employee of Sierra Blanca "for the purpose of receiving workers' compensation benefits depends on the particular relationship he had with Sierra Blanca." *Benavidez II*, although affirming this Court's reversal of summary judgment in favor of Sierra Blanca, reversed that part of this Court's decision which held that summary judgment should be granted to Claimant.[1] The Supreme Court ordered that the case be remanded for further factual inquiry regarding the nature of the relationship between Claimant and Sierra Blanca, and for entry of an appropriate judgment.

---

1. In *Benavidez II* our Supreme Court noted that "[t]he New Mexico Workers' Compensation Act covers 'any person who has entered into the employment of or works under contract of service or apprenticeship with an employer[,]'" and

recognized that "[u]nder the statutory scheme, the relationship between an inmate and an entity for whom that inmate works is characterized in such a way that the Worker's Compensation Act applies." 122 N.M. at 214, 922 P.2d at 1210.

{4} On remand, both Claimant and Sierra Blanca presented evidence bearing on the nature of Claimant's employment. The evidence was largely undisputed, although the parties vigorously disagreed concerning the effect of the evidence. Claimant also presented evidence he had incurred medical bills totalling $51,748.82 arising out of the accident. After considering the evidence at trial, the WCJ determined that Claimant did not have an employer-employee relationship with Sierra Blanca and that he was not a worker as defined by Section 52–1–16(A) (1989) of the Act.

## DISCUSSION

{5} Claimant contends the WCJ erred in finding that he was not an employee of Sierra Blanca within the contemplation of the Workers' Compensation Act. We agree.

{6} The Act provides that an employee has the right to compensation for injuries arising out of and in the course of his employment, § 52–1–9 (1973), and defines a worker or employee as "any person who has entered into the employment of or works under contract of service or apprenticeship with an employer, except a person whose employment is purely casual and not for the purpose of the employer's trade or business." Section 52–1–16(A). To obtain benefits under the Act, Claimant had the burden of establishing that he was an employee of Sierra Blanca rather than performing work as an independent contractor. See Dibble v. Garcia, 98 N.M. 21, 23, 25, 644 P.2d 535, 537, 539 (Ct.App.1982); see also Tafoya v. Casa Vieja, Inc., 104 N.M. 775, 778, 727 P.2d 83, 86 (Ct.App.1986) (affirming trial court's dismissal of plaintiff's claim for workmen's compensation benefits after it concluded that plaintiff was not defendant's employee, but was an independent contractor); Burton v. Crawford & Co., 89 N.M. 436, 440, 553 P.2d 716, 720 (Ct.App.1976) (affirming summary judgment which denied plaintiff's claim for workmen's compensation on the grounds that plaintiff was an independent contractor and not an employee of defendant).

{7} Whether Claimant was an employee or an independent contractor in his relationship with Sierra Blanca is a question of law to be determined from the facts. See Dibble, 98 N.M. at 23, 644 P.2d at 537; see also Jelso v. World Balloon Corp., 97 N.M. 164, 167, 637 P.2d 846, 849 (Ct.App.1981). In reviewing the WCJ's findings of fact we apply a whole record standard of review and look not only at the evidence that is favorable, but also evidence that is unfavorable to the WCJ's determination. See Chavez v. Mountain States Constructors, 1996–NMSC–070, ¶ 20, 122 N.M. 579, 929 P.2d 971. "In determining the existence of an employer-employee relationship, no one single factor is decisive; rather, all relevant circumstances must be considered." Benavidez II, 122 N.M. at 215, 922 P.2d at 1211.

{8} In Harger v. Structural Services, Inc., 1996–NMSC–018, 121 N.M. 657, 664, 916 P.2d 1324, 1331, our Supreme Court adopted the Restatement (Second) of Agency approach, which recognizes the significance of a variety of factors in evaluating the "right-to-control," for determining whether one acting for another is an independent contractor. See Restatement (Second) of Agency § 220 (1958). Sierra Blanca cites Harger for the proposition that substantial evidence supports the WCJ's determination that Claimant was not an employee. While Harger was particularly concerned with the construction of the term "independent contractor" within the meaning of Section 52–1–22 (1989), we apply the same approach in distinguishing between an employee and an independent contractor for the purposes of determining a person's entitlement to benefits under Section 52–1–16(A). Support for this view emanates from the fact that Harger, 121 N.M. at 663, 916 P.2d at 1330, cites Burruss v. B.M.C. Logging Co., 38 N.M. 254, 31 P.2d 263 (1934) (affirming determination that truck driver was an employee within the meaning of a predecessor statute to Section 52–1–16(A) rather than an independent contractor), as evidence of its consistent adherence to the principle that the primary consideration is the right to control.

{9} Harger, 121 N.M. at 667, 916 P.2d at 1334, identified a number of factors that are used to determine the existence of the right of control, or the existence of an employer-

employee relationship, including the following:

[1.] [D]irect evidence of the exercise of control[;] [2.] the right to terminate the employment relationship at will, by either party, and without liability[;] ... [3.] the right to delegate the work or to hire and fire assistants[;] [4.] the method of payment, whether by time or by the job[;] ... [5.] whether the party employed engages in a distinct occupation or business; [6.] whether or not the work is a part of the employer's regular business; [7.] the skill required in the particular occupation; [8.] whether the employer supplies the instrumentalities, tools, or the place of work; [9.] the duration of a person's employment, and whether that person works full-time or regular hours; [and] [10.] whether the parties believe they have created the relationship of employer and employee, insofar as this belief indicates an assumption of control by one and submission to control by the other.

{10} Sierra Blanca emphasizes a number of factors supporting the WCJ's determination that it did not have an employer-employee relationship with Claimant. It argues that Claimant's work was unrelated to its regular business of selling and servicing automobiles; that Sierra Blanca never intended to form an employer-employee relationship with Claimant; that Claimant knew he was not considered an employee of Sierra Blanca; that he was not treated similarly to non-inmate workers with respect to the employment application process, sick leave, vacation time, holiday pay, health insurance, workers' compensation insurance, method of payment, and withholding of income taxes; and that Sierra Blanca did not have control over the details and manner of completing the project on which Claimant was working.

{11} Although Sierra Blanca is correct that there is evidence which supports the WCJ's determination that Claimant's job of dismantling and cleaning up a building was not part of Sierra Blanca's regular business, the undisputed facts indicate that Claimant was not engaged in an independent business of preparing buildings for remodeling; that his position was that of an unskilled laborer;

that he was paid by the hour; that Sierra Blanca provided the tools Claimant needed to perform his assignments, the ladder he was utilizing at the time of the accident, and directed the place to work; that Sierra Blanca hired Claimant to work full-time at a task that required one and one-half months to complete; that it had the right to supervise the work being performed by Claimant; and that it had the right to hire or dismiss workers on the project. *See* Restatement (Second) of Agency, *supra* § 220(2) (setting forth facts to be considered in determining whether someone is a servant or an independent contractor). Neither party asserts that Claimant's status at the time of the accident came within the category of leased labor. *See* N.M. Const. art. XX, § 18 (prohibiting the leasing of convict labor).

{12} Sierra Blanca cites the testimony of Wayne Ward, its general manager, that Claimant and the other inmates were permitted to figure out for themselves the best way to accomplish the demolition and cleaning tasks, as evidence that the company did not have control over how the inmate work crew performed its responsibilities. This testimony, at best, however, was evidence that Sierra Blanca permitted Claimant to control some aspects of his work. *See American Employers' Ins. Co. v. Grabert*, 39 N.M. 173, 175, 42 P.2d 1116, 1117 (1935) ("If the evidence shows that in some particulars there was a failure of the mining company to exercise control, this does not negative its right and power to do so."); *Rivera v. Sagebrush Sales, Inc.*, 118 N.M. 676, 679–80, 884 P.2d 832, 835–36 (Ct.App.1994) (evidence that worker was usually allowed to work alone and without supervision only indicated that the type of work he was performing did not require the continual exercise of his employer's right to control the details of the work). However, the general manager's testimony that he instructed Claimant how to dismantle the doors and take measurements indicates both that Sierra Blanca retained the right to control the details or means and methods of Claimant's performance and that the company did, in fact, exercise such control. *See Burruss*, 38 N.M. at 257, 31 P.2d at 264 ("when the control descends to the details or to the means and methods of performance,"

this indicates that claimant is a servant or employee).

{13} Sierra Blanca's intent to treat Claimant as an independent contractor is not solely determinative. *See Rivera*, 118 N.M. at 679, 884 P.2d at 835 ("characterization of relationship by worker or employer does not control determination of whether employment relationship exists"); *Whittenberg v. Graves Oil & Butane Co.*, 113 N.M. 450, 456, 827 P.2d 838, 844 (Ct.App.1991) ("[F]or purposes of determining coverage under the Workers' Compensation Act, findings regarding the intent of the parties in this case cannot substitute for findings on other pertinent factors."); *Yerbich v. Heald*, 89 N.M. 67, 69, 547 P.2d 72, 74 (Ct.App.1976) ("[T]he relationship of the parties is not to be determined from the name attached to it by them, but from the consequences which the law imputes to their agreement to prevent evasion of the obligations which the act imposes upon employers."); *cf.* Restatement (Second) of Agency, *supra* § 220, cmt. m, at 492 ("It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other.").

{14} Similarly, evidence that Sierra Blanca did not treat Claimant as it did non-inmate employees, while indicating that Sierra Blanca considered Claimant to be of a different status than its regular employees, is not dispositive because such evidence fails to demonstrate that Claimant was not subject to Sierra Blanca's right of control. Although Sierra Blanca remitted Claimant's wages to RCC rather than directly to Claimant, it is undisputed that Claimant was paid on an hourly basis and that the reason why the payment was handled through RCC was (1) to keep money out of the hands of prisoners and (2) to enable RCC to be reimbursed for costs of the program.

{15} What is significant, however, is that undisputed facts establish that Sierra Blanca had the right of control over Claimant that an employer typically might exercise over an employee. *See* UJI 13–403 NMRA 1998. Thus, as a matter of law, Claimant cannot be considered an independent contractor for the purposes of Section 52–1–16(A). *See Jelso*, 97 N.M. at 167, 637 P.2d at 849 ("whether the status of an employer-employee relationship exists" is a question of law if the material facts are undisputed).

{16} Having determined that Claimant was an employee of Sierra Blanca rather than an independent contractor, we next consider whether he is excluded from the definition of "worker" in the Workers' Compensation Act by the "casual employment" exception.

{17} Section 52–1–16(A) contains two provisions, both of which must be satisfied before an employer will be found not liable for workers' compensation benefits. These provisions are that (1) the employment must be purely casual, and (2) the employment must not be for the purpose of the employer's trade or business. *See Barger v. Ford Sales Co.*, 89 N.M. 25, 26–27, 546 P.2d 873, 874–75 (Ct.App.1976) (employment not excluded under predecessor statute to Section 52–1–16(A) where the claimant's work was for the purpose of the defendant's trade or business); *see also* 4 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 51.11 (1997) (*Larson's*) (under the majority view, both provisions must be independently satisfied if the employment is to be deemed excluded). Sierra Blanca asserts that substantial evidence supports the WCJ's determination that Claimant's employment as a laborer in the remodeling process was both (1) irregular, sporadic, and brief; and (2) not related to the sales and service of automobiles, Sierra Blanca's regular trade or business. *See Williams v. Cooper*, 57 N.M. 373, 378–79, 258 P.2d 1139, 1142 (1953) (construction of building for prospective business not within the usual course of the new business). Thus, Sierra Blanca contends, Claimant is not a "worker" as defined in Section 52–1–16(A).

{18} For the reasons set forth below, we hold that the WCJ's determination that Claimant's employment was "purely casual" is not supported by substantial evidence. Since the first provision of Section 52–1–16(A) has not been satisfied, Claimant's employment with Sierra Blanca is not excluded.

{19} As our Supreme Court noted in *Harger*, 121 N.M. at 662 n. 1, 916 P.2d at 1329 n. 1, " '[c]asual employment' is not defined in the Act[, and] Professor Larson defines [the term] as employment that is 'irregular, unpredictable, sporadic, and brief.' " *See* 4 *Larson's* § 51.00, at 9–166. This definition apparently was utilized by the WCJ in reaching his conclusion that Claimant's employment was casual. The undisputed evidentiary facts of record, however, do not support such findings.

{20} Claimant, citing the Supreme Court's statements in *Benavidez II*, 122 N.M. at 211, 922 P.2d at 1207, to the effect that he had been working at the jobsite for over a month before he was injured, contended in his brief-in-chief that there was no evidence to support the WCJ's description of his employment as irregular and sporadic. In response, Sierra Blanca made the general assertion that the WCJ's findings regarding the irregular, unpredictable, sporadic, and brief nature of Claimant's job are supported by Ward's formal hearing testimony, but Sierra Blanca fails to indicate what specific testimony of Ward is probative of the casual nature of Claimant's employment. *Cf. English v. English*, 118 N.M. 170, 176, 879 P.2d 802, 808 (Ct.App.1994) (where appellee fails to point out evidence refuting appellant's argument that evidence does not exist to support trial court's finding, appellate court not required to search the record to determine if there is such evidence). Having reviewed Ward's trial testimony, both live testimony and his deposition submitted at trial, we cannot say that such evidence was sufficient to establish that Claimant's work for Sierra Blanca consisted of "casual employment." The testimony indicates that Ward was overseeing the project of converting a building owned by Sierra Blanca so that it could be leased to a government agency. Sierra Blanca was seeking to hire a general contractor to do the construction work, but it wanted to do some of the clean up and dismantling work itself. Sierra Blanca had not previously engaged in that type of work, it did not have any regular employees available, and it was not sure how long the preliminary work would last. Ward requested the help of five inmate laborers from RCC, and he was in-

formed that their rate of pay would be a minimum of $4.35 an hour. Sierra Blanca was not planning on keeping the inmates on as employees after their work on the building was completed.

{21} RCC regularly delivered inmates, including Claimant, to the jobsite at 7:00 a.m. and picked them up at 5:00 p.m. Ward kept track of the men's hours, and they usually worked from 8:00 a.m. to 5:00 p.m. Sierra Blanca issued checks to RCC for the total number of all the men's hours based on the minimum wage. The pay periods for inmates working on the project were bimonthly, and the work hours were approximately forty hours a week with Saturdays and Sundays off. The job continued for a month and a half. Claimant was injured at the jobsite during the third pay period. Ultimately, Sierra Blanca hired a building contractor to finish the dismantling and construction.

{22} New Mexico courts have not fully considered the question of what evidentiary facts are sufficient to support a determination that a worker is a casual employee in the context of Section 52–1–16(A). *Cf. Barber v. Los Alamos Beverage Corp.*, 65 N.M. 323, 329–31, 337 P.2d 394, 397–99 (1959) (affirming the trial court's determination that the plaintiff's employment was purely casual where it was as an "extra" man to do "extra" work for one day only for certain), *with Williams*, 57 N.M. at 375, 258 P.2d at 1139 ("The construction of the addition [to the defendant's business] was extensive enough to require five or six weeks to complete it and could not be said to be merely casual."). Courts in other jurisdictions, however, have considered this issue in a variety of different contexts.

{23} Section 52–1–16(A) calls for a consideration of whether a worker's employment is purely casual. This is a different matter than a claimant's relation to his or her employment. *See* 4 *Larson's* § 51.12, at 9–174 ("the test usually applied is whether the *employment* is casual—not whether this employee's relation to the employment is casual or brief").

{24} There is no indication that the employment in which Claimant was engaged

was "irregular" or "sporadic"; the work schedule for the inmates from RCC was approximately forty hours a week with Saturdays and Sundays off. *Cf. Smith v. Coastal Tire & Auto Serv.*, 263 S.C. 77, 207 S.E.2d 810, 811 (1974) (claimant had no specified days or times when he was required to report for work). The employment of laborers to prepare the building for construction was planned by Sierra Blanca rather than engaged in on an emergency basis or a casual basis. "If the work is not of an emergency or incidental nature but represents a planned project, and the tenure of the service necessary to complete it and for which the employment is to continue is of fairly long duration, the employment is not casual[.]" *Cochrane v. William Penn Hotel*, 339 Pa. 549, 16 A.2d 43, 45 (1940).

{25} Given Sierra Blanca's principal business, the nature of the employment opportunity may have been unusual and the length of time necessary to complete the task may have been uncertain; however, the character of that employment demonstrated that it was not of casual duration. 4 *Larson's* § 51.12, at 9–170 ("the element of duration must be weighed in with the element of predictability"). That regularity is demonstrated both by the work schedule and the fact that the employment was of approximately six weeks duration. *See* 4 *Larson's* § 51.12, at 9–171 to –172 ("duration for several weeks or months is usually in itself enough" to establish that employment is not casual (footnotes omitted)).

{26} Finally, we believe the decision in *Gill v. Workmen's Compensation Appeal Board*, 57 Pa.Cmwlth. 161, 425 A.2d 1206 (1981), is instructive here. In that case the business owners were in the process of purchasing a building next door to their laundromat in preparation for moving into that facility. The owners hired the claimant and several other persons to clear out and clean up the inside of the new building, a project that lasted a month and a half. The claimant was engaged at an hourly rate and he worked on a full-time basis; eight hours a day, five days a week. The injured claimant was seventeen years old and skipped school to do the work. Citing the same language

from *Cochrane* that we have quoted above, the *Gill* court held that the claimant's employment could not be characterized as casual in nature.

{27} We hold that the record does not contain substantial evidence supporting the findings underlying the WCJ's conclusion that Claimant's employment with Sierra Blanca was "purely casual." Based on undisputed evidence, the record indicates Claimant was an employee of Sierra Blanca at the time he was injured. *See Wright v. First Nat'l Bank*, 1996–NMCA–058, ¶ 6, 122 N.M. 34, 919 P.2d 1099 ("Because the facts are essentially undisputed, we review the trial court's order to ascertain whether the trial court properly applied the law to the facts before it."), *rev'd in part on other grounds*, 1997–NMSC–026, 123 N.M. 417, 941 P.2d 498. Thus, Claimant is not excluded from coverage under the Act pursuant to Section 52–1–16(A). Because we find that Claimant is a worker under the definition in Section 52–1–16(A), it is unnecessary for us to address Claimant's other arguments based on Section 52–1–22.

*CONCLUSION*

{28} Based on the undisputed facts, we hold as a matter of law that Claimant had an employer-employee relationship with Sierra Blanca. We also hold that the WCJ's determination that Claimant's employment with Sierra Blanca was purely casual and thus excluded under Section 52–1–16(A) is not supported by substantial evidence. The cause is reversed and remanded for further proceedings consistent with this opinion. In the event Claimant is awarded workers' compensation benefits at trial, the WCJ shall also provide for his attorney fees incident to this appeal.

{29} **IT IS SO ORDERED.**

HARTZ, C.J., and BOSSON, J., concur.