2008-NMCA-115

191 P.3d 1197

**REULE SUN CORPORATION,**
**Plaintiff–Appellee,**

v.

**Joe L. VALLES and Joanne S. Valles,**
**husband and wife, Defendants–**
**Appellants.**

**No. 27,254.**

Court of Appeals of New Mexico.

June 6, 2008.

Certiorari Granted, No. 31,192,
Aug. 26, 2008.

Robert D. Gorman, P.A., Robert D. Gorman, Cheryl Thompson, Albuquerque, NM, for Appellee.

Cadigan Law Firm, P.C., Michael J. Cadigan, Albuquerque, NM, for Appellants.

## OPINION

CASTILLO, Judge.

{1} In this appeal, we determine whether Reule Sun Corporation (Reule), a duly licensed general contractor, may sue homeowners Joe and Joanne Valles (Valleses) for payment on a construction contract when Reule employed an unlicensed individual, Claudino Perez (Perez), and his crew to perform the work. The trial court allowed the suit and concluded that Reule did not violate the licensing provisions of the Construction Industries Licensing Act (CILA), NMSA 1978, §§ 60-13-1 to -59 (1967, as amended through 2007). We affirm.

## I. BACKGROUND

{2} In April 2003, Reule, a duly licensed general contractor, entered into a contract to apply stucco and perform related repair services on Valleses' residence. Valleses agreed

to pay approximately $12,200 for Reule's construction-related services. Reule employed Perez, who was not licensed at that time, to perform the work required under the contract. In late spring 2003, Perez and his crew began the work on Valleses' residence.

{3} Valleses were dissatisfied with the quality of the work and demanded that it be redone. Reule agreed to remedy the deficiencies in the work by applying a second color coat of stucco to Valleses' home at no additional charge to Valleses. Perez and his crew also performed this work. Valleses, however, remained dissatisfied, complaining that the stucco had not been applied in a consistent and professional manner, that there were color variations and uneven texture, that leaks and cracks had not been properly repaired, and that Reule failed to clean up properly, all of which resulted in damage to Valleses' property. Valleses therefore refused to pay the balance due under the contract.

{4} In June 2004, Reule filed in district court a complaint against Valleses, which claimed damages for breach of contract and sought to foreclose upon a claim of lien filed against Valleses' property for the amount due under the contract. Valleses answered and asserted counterclaims for breach of contract, breach of warranty, breach of implied warranties, negligence, and malicious abuse of process.

{5} More than two years after the complaint was filed and approximately one month before trial, Valleses discovered—while deposing Reule's owner, Robert Reule—that Perez was not licensed as a contractor when performing the stucco and related repair work on Valleses' home. Based on this information, Valleses raised the affirmative defense that Reule is precluded from recovering payment for work performed by an unlicensed subcontractor. Valleses also moved to stay the trial and to amend the counterclaims. Although the trial court denied Valleses' motion to stay, the court ruled that Valleses could present evidence on the issue of Perez's status and that at the conclusion of trial, the court would reconsider Valleses' motion to amend the counterclaims to conform to the evidence presented.

{6} At trial, in addition to presenting evidence on their claims and counterclaims, the parties argued and presented evidence on the issue of Reule's use of Perez to perform the work under the contract. Valleses argued that because Reule had hired an unlicensed subcontractor to perform the work, Reule is barred from maintaining its action to recover payment on the contract, pursuant to Section 60–13–30(A). Reule countered that its suit is not barred by the statute because Reule was duly licensed to perform the work and because Perez was Reule's employee and was thus not required to be licensed under CILA.

{7} After a two-day bench trial, the court entered its decision in favor of Reule. The trial court found that Reule had substantially performed its obligations under the contract, except for certain finishing and cleanup work, which Valleses had prevented Reule from completing. In concluding that Reule was entitled to maintain its action against Valleses, the trial court found that because Reule was "solely responsible for the performance of the contract" and because Perez "work[ed] under the complete direction and control of Reule," the contract was valid and enforceable, and the protective purposes of CILA were met. The trial court also found that Reule was not acting as an "agent" for any unlicensed contractor in connection with the contract and "did not have a primary motive to misuse the process to accomplish an illegitimate end." The trial court foreclosed the lien on Valleses' property and awarded damages to Reule, including prejudgment interest, attorney fees, and costs. The trial court also dismissed Valleses' counterclaims against Reule. This appeal followed.

## II. DISCUSSION

{8} Valleses makes four arguments on appeal: (1) that Perez was a subcontractor and was thus required to be licensed under CILA, (2) that the trial court improperly denied the motion to stay trial and amend counterclaims, (3) that certain photographic evidence was wrongly excluded, and (4) that the trial court erred by limiting the time available to Valleses for presenting evidence at trial. We address each argument in turn.

## A. CILA

■ {9} The overarching issue in this appeal is whether CILA bars Reule from recovering on its contract with Valleses because Reule, a licensed contractor, hired Perez, who did not have a license, to perform the work. Section 60–13–30(A) makes the following prohibition:

> No contractor shall act as agent or bring or maintain any action in any court of the state for the collection of compensation for the performance of any act for which a license is required by [CILA] without alleging and proving that such contractor was a duly licensed contractor at the time the alleged cause of action arose.

Under CILA, all contractors and subcontractors must be licensed. Section 60–13–12(A) ("No person shall act as a contractor without a license issued by the division classified to cover the type of work to be undertaken."); Section 60–13–3(B) (including "subcontractor" in the definition of the term "contractor" under CILA). As a result, unlicensed contractors and subcontractors may not recover on contracts that are governed by CILA. *See Gamboa v. Urena*, 2004–NMCA–053, ¶ 12, 135 N.M. 515, 90 P.3d 534 (observing that CILA prohibits an unlicensed contractor from filing an action for compensation). There is no dispute that Perez did not have a contractor's license when he performed the work on Valleses' home. Instead, the dispute revolves around the legal relationship between Reule and Perez.

{10} Valleses make three arguments to support their contention that Reule cannot recover on the contract. First, Valleses argue that Reule violated CILA by using an unlicensed subcontractor and is therefore barred from any recovery on the contract. Second, Valleses contend that Reule and Perez circumvented the licensing requirement by sharing Reule's license and that Reule should therefore not be permitted to recover on the contract. Third, Valleses argue that the policy behind CILA demands that Reule be prevented from recovering on work performed by an unlicensed subcontractor. Reule contends that it was entitled to recover on the contract because Perez was an employee and therefore needed no license. We agree with Reule.

### 1. Subcontractor/Employee Relationship

■ {11} Section 60–13–3(D) provides eighteen exemptions from CILA's licensing requirement. Additionally, our Supreme Court has determined that an employee is not a contractor and is therefore not required to obtain a contractor's license. *Mascareñas v. Jaramillo*, 111 N.M. 410, 412, 806 P.2d 59, 61 (1991); *Latta v. Harvey*, 67 N.M. 72, 75–76, 352 P.2d 649, 650–51 (1960). Indeed, Valleses admit that if Perez were an employee, he would not have been required to obtain a contractor's license. Their contention is, however, that Perez was a subcontractor, who was required to be licensed, and that the trial court improperly allowed Reule to recover for work performed by an unlicensed subcontractor. Because we agree with the trial court that Perez was an employee, not a subcontractor, we need not reach the question of whether a duly licensed contractor may recover for work performed by an unlicensed subcontractor.

{12} Whether Reule and Perez maintained an employer-employee relationship is a mixed question of law and fact. *See Benavidez v. Sierra Blanca Motors*, 1998–NMCA–070, ¶ 7, 125 N.M. 235, 959 P.2d 569. Under these circumstances, we "conduct a de novo review of the trial court's application of the law to th[e] facts," and we review the trial court's findings of fact for substantial evidence. *Allen v. Timberlake Ranch Landowners Ass'n*, 2005–NMCA–115, ¶ 13, 138 N.M. 318, 119 P.3d 743. In viewing the facts that were determined by the trial court, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177.

■ {13} In construction cases, our courts have stated that "[t]he principal test to determine whether one is ... an employee is whether the employer has any control over the manner in which the details of the work are to be accomplished." *Campbell v. Smith*,

68 N.M. 373, 377, 362 P.2d 523, 525–26 (1961). Further, "it is the right to control, not the exercise of it, that furnishes the test." *Id.* at 377, 362 P.2d at 526 (internal quotation marks and citation omitted). This Court and our Supreme Court have considered the Restatement (Second) of Agency § 220 (1958) approach to be instructive when determining whether an employer had a right to control a worker. *Celaya v. Hall,* 2004–NMSC–005, ¶¶ 5, 14–15, 135 N.M. 115, 85 P.3d 239 (applying the Tort Claims Act); *Chavez v. Sundt Corp.,* 1996–NMSC–046, ¶¶ 1, 9, 122 N.M. 78, 920 P.2d 1032 (applying the Workers' Compensation Act); *Harger v. Structural Servs., Inc.,* 121 N.M. 657, 660–61, 916 P.2d 1324, 1327–28 (1996) (same); *Headley v. Morgan Mgmt. Corp.,* 2005–NMCA–045, ¶¶ 1, 8, 137 N.M. 339, 110 P.3d 1076 (same). The Restatement (Second) of Agency § 220(2) lists several factors with which to evaluate the right to control. Those factors can be summarized in the following manner:

1) the type of occupation and whether it is usually performed without supervision; 2) the skill required for the occupation; 3) whether the employer supplies the instrumentalities or tools for the person doing the work; 4) the length of time the person is employed; 5) the method of payment, whether by time or job; 6) whether the work is part of the regular business of the employer; 7) whether the parties intended to create an employment relationship; and 8) whether the principal is engaged in business.

*Celaya,* 2004–NMSC–005, ¶ 15, 135 N.M. 115, 85 P.3d 239. "[T]hese factors are not exclusive and there is no absolute test as to what constitutes an employment relationship." *Eastland Fin. Servs. v. Mendoza,* 2002–NMCA–035, ¶ 17, 132 N.M. 24, 43 P.3d 375. We therefore consider "the totality of the circumstances" in order to evaluate whether Reule had the right to control Perez. *See Harger,* 121 N.M. at 667, 916 P.2d at 1334. Applying the factors to the present case and viewing the facts in the light most favorable to the prevailing party, we conclude that there was substantial evidence to support the trial court's determination that Reule controlled Perez's work and that the relationship between Reule and Perez was therefore that of employer-employee.

{14} To begin work on Valleses' contract, Reule issued a work order to Perez. The work order detailed the work to be done and directed Perez and his crew to (1) prepare the site for stucco, including trenching, trimming shrubs to allow access, removing loose and spalling stucco, water blasting, masking windows, doors, and fixtures, patching holes and voids, applying netting, applying a fiberglass reinforced base coat, and removing construction-related debris; (2) apply two color coats of stucco in Adobe Brown; and (3) perform additional repairs, including removing and repairing the railings over the garage and the entryway, fixing water leaks, and resealing windows. Before the job began, Reule's sales manager, Steve Savage (Savage), "walked through" and discussed the job with Perez. Savage visited the site once or twice during the first stucco application and observed the work being performed by Perez and his crew. After it became apparent that there were deficiencies in the work, Reule directed Perez and his crew to perform remedial work. Savage visited the site several times to monitor the progress of the application. Reule generally oversaw both stucco applications by Perez and his crew, and Reule also specifically controlled the use of brocade textures on the job.

{15} In addition, the trial court heard evidence that Perez was Reule's primary stucco applicator. Perez worked exclusively for Reule on a full-time basis for four years. Although Perez did business as Perez Plastering, had his own tax identification number, and maintained his own crew of workers, Perez did not advertise, had no business listing in the telephone directory, and did not hand out business cards; nor did he work for any other company. At trial, Mr. Reule explained that the company's relationship with other crews was different from the company's relationship with Perez and his crew. Reule furnished Perez and his crew with most of the major equipment and materials necessary for doing the job. Although Perez and his crew drove their own vehicles and brought their own hand tools to the work site, Reule provided the mixers, scaffolding, water blasters, stucco product, and patching

material, as well as access to Reule's supply house. At the work site, Perez and his crew were required to wear Reule uniforms and caps, to display Reule signs, and to conduct themselves as representatives of Reule. Reule guided and directed Perez in the performance of his work and also provided most of the necessary equipment and materials. Reule also provided workers' compensation, general liability, and completed-operations insurance covering Perez and his workers. Reule required other crews to "furnish a two[-]year labor warranty" for their work and to remedy defects at their own expense; Perez, however, was not required to do the same. When problems arose from the performance of the job in this case, Reule assumed full responsibility for remedying the problems and paid Perez and his crew for the additional time spent addressing the problems.

■ {16} Valleses point out that Perez was not paid by salary or wages but, instead, was customarily paid by the job or the contract. Valleses are correct that Perez does not fall within the "wage-earning employee" exemption recognized by Section 60–13–3(D)(13). *Mascareñas,* 111 N.M. at 412, 806 P.2d at 61; *see also* § 60–13–3(D)(13) (providing that "an individual who works only for wages" is not a contractor); NMSA 1978, § 60–13–2(I) (1989) (amended 2003) (defining the term "wages" as "compensation paid to an individual by an employer from which taxes are required to be withheld by federal and state law"). Nevertheless, under the broader common law employee exception, which is applicable in this case, the method of payment is but one factor for us to consider in determining whether one is an independent contractor or an employee. *See Harger,* 121 N.M. at 667, 916 P.2d at 1334 (emphasizing that "no particular factor should receive greater weight than any other, except when the facts so indicate, nor should the existence or absence of a particular factor be decisive"); *Eastland Fin. Servs.,* 2002–NMCA–035, ¶ 17, 132 N.M. 24, 43 P.3d 375 ("We consider all relevant circumstances when determining whether an employer[-]employee relationship exists."). If we were to consider wages as the determinative factor, there would be no need to analyze the employer-employee relationship under the common law exception because the statutory wage exemption would control. Therefore, we do not consider the fact that Perez was paid in a manner other than wages to be determinative of his employment status. *See* Restatement (Second) of Agency § 220 cmt. j.

■ {17} Valleses also cite evidence that Reule often referred to Perez as a subcontractor, when the company issued checks to him and during trial testimony. However, we look to the substance of the relationship in order to determine whether a person is an employee and not the characterization given by the parties. *See Benavidez,* 1998–NMCA–070, ¶ 13, 125 N.M. 235, 959 P.2d 569; Restatement (Second) of Agency § 220 cmt. m ("It is not determinative that the parties believe or disbelieve that the relation of master and servant exists, except insofar as such belief indicates an assumption of control by the one and submission to control by the other."). We have already discussed the evidence presented regarding the substance of the relationship between Reule and Perez, and we therefore conclude that Reule's use of the term "subcontractor" when referring to Perez was not indicative of the legal relationship between the parties.

■ {18} In a similar vein, Valleses complain that the trial court erroneously concluded that Perez was a "subcontractor/employee," a category not recognized under New Mexico law. The trial court characterized Perez as a "subcontractor/employee" only when making its oral ruling and not in its written findings and conclusions. *See Ledbetter v. Webb,* 103 N.M. 597, 604, 711 P.2d 874, 881 (1985) (explaining that a trial court's verbal comments can be used to clarify a finding but that they cannot be the basis for reversal). Thus, although the trial court might have used awkward language in light of the meaningful distinction between subcontractor and employee for purposes of CILA, the comment did not rise to the level of reversible error.

■ {19} Both parties cite Section 60–13–3.1 (2005) and argue opposing positions as to

whether Perez was or was not an employee. Section 60–13–3.1(A) establishes what constitutes an employer-employee relationship within the construction industry. The presumption is that a contractor who is an employer must consider workers who provide labor or services to be employees, unless certain conditions are present. *Id.* The conditions listed in Section 60–13–3.1(A)(1–6) are largely repetitive of the factors from the Restatement (Second) of Agency § 220(2). *Compare* § 60–13–3.1(A)(1–6) *with* Restatement (Second) of Agency § 220(2). A contractor who intentionally and willfully misreports the status of an employee may be found guilty of a misdemeanor, and such conviction is grounds for CILA license suspension, revocation, or nonrenewal. Section 60–13–3.1(C), (D). On appeal, however, neither party fully develops an argument based on this statute. Moreover, both parties acknowledge that the statute was not in effect at the time the contract in this case was created or performed. For these reasons, we will not consider the application of Section 60–13–3.1 to the facts of this case.

{20} We acknowledge that at trial, Valleses provided evidence to the contrary that supported their position that Perez was a subcontractor. However, we are not persuaded by this recitation of facts because the question on appeal is not whether substantial evidence exists to support the opposite result but, rather, whether there is substantial evidence in the record to support the result reached at trial. *See Las Cruces Prof'l Fire Fighters*, 1997–NMCA–044, ¶ 12, 123 N.M. 329, 940 P.2d 177; Restatement (Second) of Agency § 220 cmt. c (stating that it is for the trier of fact "to determine whether or not there is a sufficient group of factors to establish the relation" of employer and employee). "It has been firmly established in this jurisdiction that only the trier of facts may weigh the testimony, determine the credibility of witnesses, reconcile inconsistent or contradictory statements of a witness, and say where the truth lies." *Mascareñas*, 111 N.M. at 412, 806 P.2d at 61. Further, "[o]ur duty is to interpret the findings made to determine whether they are sufficient to support the judgment entered thereon." *Id.* Based on review of the record, we hold that substantial

evidence supports the trial court's finding that Reule had the right to control Perez, and we hold that the trial court therefore properly concluded that Perez was an employee of Reule.

### 2. Shared License

■ {21} Section 60–13–30(A) also prevents a licensed contractor from acting as an agent for an unlicensed contractor in order to collect "compensation for the performance of any act for which a license is required." Valleses argue that Reule and Perez unlawfully shared a license in order to perform the contract and that as a result, Reule may not recover on the contract. The trial court found that Reule did not act "as an agent for any unlicensed contractor in connection with the contract with Valles[es]." We agree with the trial court.

{22} Valleses' license-sharing argument is premised on the conclusion that Perez was required by CILA to have a contractor's license. We have already determined that substantial evidence supported the trial court's finding that Perez was an employee and was thus not required to have a license. Additionally, we noted that the trial court also found that Reule did not act as an agent for any unlicensed contractor. On appeal, Valleses do not challenge this finding, and we are therefore bound by the trial court's determination. *See Stueber v. Pickard*, 112 N.M. 489, 491, 816 P.2d 1111, 1113 (1991). Because Perez was not required to have a license in order to perform the work on Valleses' home, Section 60–13–30(A) does not prevent Reule from recovering on the contract.

### 3. CILA's Policy

■ {23} Valleses also contend that the policy behind CILA would be violated if a duly licensed contractor were permitted to recover for work performed by an unlicensed subcontractor. Although we acknowledge that "our legislature has chosen to harshly penalize unlicensed contractors by denying them access to the courts to collect compensation for work performed," *Roth v. Thompson*, 113 N.M. 331, 333, 825 P.2d 1241, 1243

(1992), we will not permit the use of CILA "as a shield against paying a just obligation.". *Triple B Corp. v. Brown & Root, Inc.*, 106 N.M. 99, 101, 739 P.2d 968, 970 (1987) (internal quotation marks and citation omitted). We read Valleses' argument to urge this Court to hold that CILA bars recovery by a contractor who hires an unlicensed subcontractor to perform work for the contractor. We need not reach this specific question because the trial court determined, and we agree, that Perez is an employee. Additionally, the out-of-state authorities cited by Valleses to support their policy argument are distinguishable because none of the cases deal with an employer-employee relationship. *See Precision Fabricators, Inc. v. Levant*, 182 Cal.App.2d 637, 6 Cal.Rptr. 395, 398–99 (1960) (requiring two contractors who perform work as a joint venture to obtain a license for the joint venture); *Kvaerner Constr., Inc. v. Am. Safety Cas. Ins. Co.*, 847 So.2d 534, 539 (Fla.Dist.Ct.App.2003) (preventing a general contractor from recovering on a performance bond because the general contractor could not enforce the underlying contract against an unlicensed subcontractor); *State v. Bohne*, 2002 UT 116, ¶¶ 2–5, 18, 63 P.3d 63 (considering whether a person who constructs and sells modular homes is required to be licensed under Utah law).

{24} We acknowledge the strong public policy considerations inherent in contractor licensing issues. Valleses, however, provide little support for their contention that the trial court's decision in this case will have a negative impact on the public. Here, the licensed contractor closely supervised the work of an employee, bore the expense of remedying claimed deficiencies, and stood to lose the balance owed on the contract for substandard work. The wrongs to be remedied by the licensing requirement "are circumstances which permit unlicensed contractors to flourish and profit at the expense of the public." *Mascareñas*, 111 N.M. at 413, 806 P.2d at 62. We see no evidence of this danger in the present case.

## B. Motion to Stay Trial and Amend Counterclaims

{25} Next, Valleses argue that the trial court erred in denying their motion to stay the trial and to amend their counterclaims. We review the trial court's denial of the motion for an abuse of discretion. *See Paragon Found., Inc. v. State Livestock Bd.*, 2006–NMCA–004, ¶ 31, 138 N.M. 761, 126 P.3d 577 (stating that an appellate court reviews the denial of a motion for continuance for abuse of discretion); *Lovato v. Crawford & Co.*, 2003–NMCA–088, ¶ 6, 134 N.M. 108, 73 P.3d 246 ("A motion to amend is addressed to the discretion of the trial court and will not be disturbed unless an abuse of discretion has occurred."). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996–NMSC–078, ¶ 65, 122 N.M. 618, 930 P.2d 153.

{26} Valleses moved for a continuance of the trial and, invoking the doctrine of primary jurisdiction, requested that the case be referred to the Construction Industries Licensing Division (Division) for an investigation and decision on the issue of Reule's use of Perez. Based on Valleses' discovery that Perez was unlicensed, Valleses also sought leave to amend their counterclaims. After the trial court questioned defense counsel concerning the binding effect, if any, of the Division's decision, the court concluded that it was capable of deciding the issues without the expertise and input of the Division. The trial court explained that it would consider any evidence presented on the issue of Perez's status and would render a decision based upon review of the applicable case law. The trial court further noted how long the case had been pending and pointed out that both parties had invested considerable "time and energy" in the case and that if the trial continued, it would not commence for another six months at the earliest. Because the trial court reasonably determined that it could competently and efficiently resolve the issues in this case, we affirm the denial of the motion for stay.

{27} We also conclude that the trial court did not err in denying Valleses' motion to amend counterclaims. The trial court denied the motion but agreed to hear evidence on the issue of Perez's status. Reule claims

in its answer brief that Valleses "never provided the court with a legally sufficient theory or a proposed amendment either before or at the conclusion of the trial and never specified any relief sought." Valleses do not respond to this contention in their reply brief. *See Delta Automatic Sys., Inc. v. Bingham,* 1999–NMCA–029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (noting that the failure to respond to contentions made in the answer brief "constitutes a concession on the matter"). Therefore, we affirm the trial court's denial of the motion to amend.

## C. Photographic Evidence

■ {28} Valleses next argue that the trial court erred in excluding certain photographs depicting the condition of the property following the second stucco application. The trial court excluded the photographs for insufficient foundation because there were no dates on the photographs to indicate when they were taken. Valleses, however, claim that pursuant to Rule 11–901(A) NMRA, a sufficient foundation was laid by the testimony of Joe Valles. We review the admission or exclusion of evidence for an abuse of discretion. *Cumming v. Nielson's, Inc.,* 108 N.M. 198, 203, 769 P.2d 732, 737 (Ct.App. 1988). In order to obtain reversal, "the complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial." *Id.* at 203–04, 769 P.2d at 737–38.

{29} Valleses have not claimed that any prejudice resulted from the exclusion of the photographs, which appear to be cumulative of other testimony and photographs presented. Therefore, even if we were to accept Valleses' contention that a proper foundation for the admission of the photographs was established, we would affirm because no prejudice has been shown.

## D. Limiting Time for Trial

■ {30} Valleses additionally argue that the trial court erred in limiting the time they had to present evidence on their counterclaims and defenses at trial. Because the use of a translator was required for Perez, Valleses contend that Reule had an entire day to present its case in chief but that Valleses had less than half a day to present evidence on both their defenses and counterclaims. However, Valleses were given considerable latitude to develop their case during the cross-examination of Reule's witnesses. *See State v. Ahasteen,* 1998–NMCA–158, ¶ 28, 126 N.M. 238, 968 P.2d 328 (explaining that the trial court has "inherent power" to control and expedite the flow of proceedings from the time of filing through the final disposition). We therefore conclude that the amount of time permitted was adequate and that the trial court did not abuse its discretion in limiting the time that Valleses had to present additional witnesses at trial.

## III. CONCLUSION

{31} The trial court's judgment in favor of Reule is affirmed. We deny Valleses' motion for leave to file a brief of amicus curiae as moot.

{32} **IT IS SO ORDERED.**

WE CONCUR: IRA ROBINSON and RODERICK T. KENNEDY, Judges.