2006-NMCA-004

126 P.3d 577

**The PARAGON FOUNDATION, INC., Kit Laney, and Sherry Laney, Plaintiffs–Appellants,**

v.

**The STATE OF NEW MEXICO LIVESTOCK BOARD, Defendant–Appellee.**

**No. 25,256.**

Court of Appeals of New Mexico.

Nov. 14, 2005.

Certiorari Denied, No. 29,570, Jan. 5, 2006.

Scott & Kienzle, P.A., Paul M. Kienzle, III, Albuquerque, NM, for Appellants.

Patricia A. Madrid, Attorney General, Santa Fe, NM, David Tourek, Assistant Attorney General, David Thomson, Assistant Attorney General, Albuquerque, NM, for Appellee.

Hubert & Hernandez, P.A., Lee E. Peters, Las Cruces, NM, Amici Curiae for New Mexico Cattle Growers' Association, New Mexico Public Lands Council, New Mexico Wool Growers, Inc., Northern New Mexico Stockmen's Association.

## OPINION

ALARID, Judge.

{1} Plaintiffs Paragon Foundation, Inc., and Kit and Sherry Laney (Plaintiffs or the Laneys), appeal the district court's order dismissing their case with prejudice and denying certain motions. Plaintiffs contend that the district court erred: (1) in granting summary judgment; (2) in denying Plaintiffs' motion to file an amended complaint; and (3) in limiting discovery, denying a motion for continuance, and granting summary judgment before a deposition transcript was returned and without oral argument. Based on the following, we affirm the dismissal of Plaintiffs' complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

{2} A United States District Court entered an order and supplemental injunction in December 2003, enjoining the Laneys from placing livestock on United States Forest Service (Forest Service) lands without a valid permit. The Laneys were ordered, "in coor-

dination with and under the direction of, the ... Forest Service, to physically remove all livestock in which they have an ownership interest" from Forest Service lands. In an attempt to enforce the federal court order, the regional forester of the Forest Service and the New Mexico Livestock Board's (the Board) appointed executive director, Dan Manzanares (Manzanares), entered into a Memorandum of Understanding (MOU) in February 2004.

{3} The MOU stated that the federal court order would be implemented and that compliance with the specified protocol in the MOU would be deemed to be consistent with all applicable New Mexico statutes and regulations. The MOU provided that the inspection and transportation of the impounded livestock would take place in accordance with New Mexico's administrative regulations. It further defined the role that the Forest Service would play in the impoundment, transportation, sale, distribution of proceeds, and disposal of the livestock. The MOU was apparently created because the Forest Service wanted to ensure that it understood New Mexico statutes and codes related to the impoundment and transport of livestock. The Forest Service did not want to violate state law during the execution of the federal court order. Manzanares signed the MOU on February 20, 2004. A copy of the signed MOU was not presented to the entire Board until shortly before the Board's March 5, 2004, meeting.

{4} Plaintiffs filed a complaint in March 2004 alleging that the MOU between the Forest Service and the Board violated the Open Meetings Act, NMSA 1978, §§ 10–15–1 to–4 (1974, as amended through 1999) (OMA). The complaint alleged that in February 2004, the Board entered into the MOU with the Forest Service when Manzanares executed the MOU on behalf of the Board without the Board's authority or approval. Plaintiffs contended that no public meeting of the Board was held and a majority of the Board did not approve or authorize the MOU before the MOU was executed by Manzanares, thus violating the OMA. Plaintiffs alleged that they were entitled to a judgment declaring the MOU rescinded, void ab initio, vacated, and of no effect. Plaintiffs also sought injunctive relief preventing the Board and related persons from enforcing, implementing, and operating under the MOU. In addition, Plaintiffs sought attorney fees and costs pursuant to Section 10–15–3(C). Plaintiffs also filed an emergency motion for a temporary restraining order against the Board to prevent the implementation of the MOU. After a hearing, the district court denied Plaintiffs' motion for injunctive relief.

{5} The Board moved for summary judgment. The Board contended that no genuine issue of material fact existed because the MOU was not executed by the Board and the Board did not act on it. The MOU was merely approved by Manzanares. The Board contended that the OMA did not apply to action taken by individual public officers or employees, and therefore Plaintiffs had no claim under the OMA. The Board contended that the MOU meant nothing and had no binding affect, but that Plaintiffs wanted the district court to find it invalid under the OMA in order to obtain attorney fees and costs, even though the MOU affected no one's legal rights.

{6} Plaintiffs argued that material issues of fact existed; however, they responded that they agreed with the Board that no evidence existed that a quorum of the Board members acted in any fashion in regard to the MOU. In addition, Plaintiffs officially moved to file an amended complaint to add a claim. The Board opposed this motion. Both parties made motions on discovery issues. Plaintiffs argued that they needed to conduct more discovery to controvert the Board's motion for summary judgment and moved for a continuance. Defendant opposed the motion. These issues will be discussed in more detail in the subsequent sections of this opinion.

{7} Finally, the district court ordered that Plaintiffs' motion to file a first amended complaint and motion to continue and conduct additional discovery be denied. Further, without hearing oral argument on the motion, the district court granted the Board's motion for summary judgment and dismissed Plaintiffs' complaint with prejudice. Plaintiffs appeal this order.

## DISCUSSION

### The District Court's Order Granting Summary Judgment on the OMA Violation Alleged in the Complaint

{8} The district court granted the Board's motion for summary judgment. It determined that there was no violation of the OMA because the OMA did not apply to this action. It found that there were no genuine issues of material fact and that Manzanares acted without a quorum of the Board when he signed the MOU.

### Mootness

■ {9} Due to the status of the livestock, the issue of mootness was briefed to the district court. It appears that Plaintiffs' cattle have been rounded up, impounded, or otherwise removed, and therefore, the MOU serves no real purpose at this point. Given this state of affairs, it would appear that the issue regarding the MOU and the violation of the OMA is moot. Below, both parties agreed that this case is not moot. Plaintiffs argued that there had been no change in policy or action by the Board and the violation was complete when the MOU was executed and the livestock removed. The Board contended that even though the MOU is moot because the Forest Service is no longer removing any of the Laneys' livestock, the issue of whether a quorum of the individual members of the Board ever took action on the MOU survives.

{10} Given these arguments, even though the issue is moot because the cattle have been sold or otherwise disposed of, the issue regarding the execution of the MOU by Manzanares and the implication of the OMA is an important policy issue that is likely to occur again if the issue is not directly addressed. *See In re Pernell,* 92 N.M. 490, 493, 590 P.2d 638, 641 (Ct.App.1979). We therefore consider the OMA issue.

### OMA

{11} After reviewing the motion for summary judgment, Plaintiffs' response, affidavits, discovery responses of various sorts, and other proper matters in their file, the district court granted summary judgment. It determined that there were no genuine issues of material fact on the claim for the OMA violation alleged in the complaint.

Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. The issue on appeal is whether the [movant] was entitled to a [judgment] ... as a matter of law. We review these legal questions de novo.

*Self v. United Parcel Serv., Inc.,* 1998-NMSC-046, ¶ 6, 126 N.M. 396, 970 P.2d 582 (citation omitted). "The movant need only make a prima facie showing that he is entitled to summary judgment." *Roth v. Thompson,* 113 N.M. 331, 334, 825 P.2d 1241, 1244 (1992). The movant for summary judgment may establish a prima facie case without affidavits if, through discovery, it appears the party opposing the judgment cannot factually establish an essential element of his or her case. *See Blauwkamp v. Univ. of N.M. Hosp.,* 114 N.M. 228, 232, 836 P.2d 1249, 1253 (Ct.App.1992). "Upon the movant making a prima facie showing, the burden shifts to the party opposing the motion to demonstrate the existence of specific evidentiary facts which would require trial on the merits." *Roth,* 113 N.M. at 334–35, 825 P.2d at 1244–45. "On appeal, the prevailing movant for summary judgment has the burden 'to sustain summary judgment.'" *Kelly v. St. Vincent Hosp.,* 102 N.M. 201, 204, 692 P.2d 1350, 1354 (Ct.App.1984). "If the facts are not in dispute, and only their legal effects remain to be determined, summary judgment is proper." *Roth,* 113 N.M. at 335, 825 P.2d at 1245.

{12} Given that standard, we look at the law that was the basis of Plaintiffs' complaint. The OMA states the following:

In recognition of the fact that a representative government is dependent upon an informed electorate, it is declared to be public policy of this state that all persons are entitled to the greatest possible information regarding the affairs of government and the official acts of those officers and employees who represent them. The formation of public policy on the conduct of business by vote shall not be conducted in closed meeting. All meetings of any public body except the legislature and the courts shall be public meetings, and all persons so

desiring shall be permitted to attend and listen to the deliberations and proceedings. § 10–15–1(A).

All meetings of a quorum of members of any board ... held for the purpose of formulating public policy, including the development of ... rules, regulations or ordinances, discussing public business or for the purpose of taking any action within the authority of or the delegated authority of any board ... are declared to be public meetings open to the public at all times[.] § 10–15–1(B). The OMA further states that "[n]o resolution, rule, regulation, ordinance or action of any board, commission, committee or other policymaking body shall be valid unless taken or made at a meeting held in accordance with the requirements of Section 10–15–1." § 10–15–3(A).

{13} Under the law, if a quorum of the Board members did not act on the MOU, the OMA was inapplicable, there was no OMA violation, and summary judgment was proper. Plaintiffs contend that the district court erred in granting summary judgment because there are genuine issues of material fact. Plaintiffs continue to argue that Manzanares executed the MOU on behalf of the Board without a quorum of the Board members' approval in an open meeting. Plaintiffs contend that the MOU violated the OMA when five of the Board's nine members considered the MOU outside a public meeting.

{14} The Board argues that summary judgment was proper because no genuine issues of material fact existed to show that the OMA applied to the MOU, and because the MOU was executed by Manzanares without a quorum of the Board members authorizing it. Hence, they claim that Plaintiffs have no claim under the OMA, which requires that a quorum of the Board act. The Board argues that "the MOU is only the nonbinding and meaningless opinion of [Manzanares] that does not fall under the [OMA]." We agree with the Board that the MOU was not a proper action under Section 10–15–3, and thus there was no OMA violation.

{15} The facts support the contention that a quorum never took any action on the MOU, and summary judgment was proper. First, the complaint states, and the Board agrees, that Manzanares did not have the authority or approval of the Board to enter into the MOU. Plaintiffs contradict themselves when they contend that the MOU is an action of the Board and then state that Manzanares did not have authority from the Board to approve the MOU.

{16} Furthermore, an examination of the discovery answers provided by the individual Board members shows that Plaintiffs failed to support their claim that a violation of the OMA occurred or that a genuine issue of material fact existed. The facts presented to the district court establish that the MOU was not approved or authorized by a quorum of the Board in public or private meetings. The record reflects that Manzanares executed the MOU without the Board's approval. Though there were some knowledge and perhaps limited involvement with some Board members, this does not amount to a private approval of the MOU by a quorum in violation of the OMA. The following facts provide support that a quorum was not involved in the process leading up to the execution of the MOU.

{17} Bill Sauble, the vice chairman of the Board, had approximately three or four discussions with Manzanares concerning the MOU from the middle of February up to the Board meeting on March 5, 2004. He saw drafts of the MOU and made some comments about the MOU. He discussed the MOU with the Board between March 1 and March 5, which was *after* the MOU was executed. Bill King, the chairman of the Board, stated that prior to March 5, 2004, he discussed the MOU with Manzanares and Board member Joe Delk on one occasion. King also stated that his involvement in the process leading up to the signing of the MOU was limited to Manzanares faxing him a copy for comments, and he had no comments. Board member Delk stated that he had no involvement in the process leading up to the signing of the MOU. Delk had some discussions with some Board members regarding the dispute between the Laneys and the Forest Service and how the Board should handle the issue. However, Delk was not aware of the existence of the MOU until he received it in the mail on February 27, 2004. In fact, Delk

stated that when he received the signed copy of the MOU, he "was completely surprised and offended to see [it] .... [and] could not believe that [Manzanares] would sign a document of this significance without Board review and approval."

{18} Board member, Tweeti Blancett, stated that she was aware of the Laney "problem," but had no conversation with anyone concerning the MOU *before it was signed by Manzanares.* She was given a copy of the MOU after it was signed. Board member, David Kincaid, conversed with Delk and Sauble about the MOU before the March 5 Board meeting, but stated that he had no involvement in the process leading up to the signing of the MOU. Kincaid, Delk, and Blancett all stated that they "were caught completely by surprise to find [the MOU] had been signed by [Manzanares] without allowing each member of the . . . Board to read, provide input and vote on this most important document." Board member, Kenneth Miller, stated that he spoke with Delk, Sauble, Manzanares, and King about the MOU *after* it had already been signed. He had no involvement in the process leading up to the signing of the MOU. The remaining Board members did not have any conversations about the MOU on or before the March 5 board meeting nor did they have any involvement in the process leading up to the execution of the MOU.

{19} In answering the interrogatories, Manzanares, who is not a member of the Board, stated that a quorum of the individual Board members never took action on the MOU. Manzanares stated that he signed the MOU under his authority as executive director of the Board. Manzanares further stated that he did not speak to King regarding his approval of the MOU until after he signed it. Manzanares only had conversations with Sauble about the MOU and his approval of it.

{20} Thus, the discovery supports that there was no issue of material fact and established that a quorum did not approve the MOU. Still, Plaintiffs argue that there are genuine issues of material fact because they dispute the four undisputed material facts contained in the Board's motion for summary judgment. A review of the four undisputed material facts supports the district court's conclusion that summary judgment was appropriate. First, the Board argued that it was undisputed and no genuine issue existed that the federal court order ordered the Forest Service to impound the Laneys' livestock if they did not comply with the order. There is no issue of fact because the federal order did order such action. However, even if there was a dispute, this issue is irrelevant and immaterial as to whether the OMA was violated.

{21} Second, the Board argued that it was undisputed that Manzanares approved the MOU dealing with how the livestock would be impounded. Again, there is no genuine issue with regard to this fact. Manzanares alone signed the MOU and a quorum of the Board members did not approve the MOU at an opening meeting. Plaintiffs have not established that the Board approved the MOU.

{22} Third, the Board maintained that the Board did not authorize Manzanares to approve the MOU. Plaintiffs contend that a letter addressed to Manzanares from a person not involved in this action, some comments by a Board member, and the Assistant Attorney General demonstrate that the MOU was an action of the Board. This is without merit. The facts establish that a quorum of the Board did not take action or have any involvement in the execution of the MOU.

{23} Finally, the Board argued that it was undisputed that no evidence existed that a quorum of the Board members acted in any fashion in regards to the MOU. Initially, Plaintiffs admitted that this fact was undisputed. They now attempt to change. their admission and argue that a quorum of the Board considered the MOU, impoundment, or related issues. Despite this change in theory, the facts show that a quorum did not act on the MOU.

{24} Plaintiffs also argue that Manzanares is the Board's agent and his actions are the Board's actions. Manzanares did enter into the MOU as director of the Board. However, contrary to Plaintiffs' argument, Manzanares' execution of the MOU did not bind the Board. The Livestock Code, NMSA

1978, §§ 77–2–1 to –29 (1889, as amended through 2004), governs the Board and the executive director of the Board. The Code defines the duties of the Board. *See* §§ 77–2–2 to –7. The Code also defines the executive director's powers. *See* § 77–2–12. It states that the executive director "shall keep records of inspections of brands and earmarks as deemed necessary by the board and shall perform such other duties as are prescribed by the board." *Id.* As the Board avers, Manzanares' largely unilateral action is non-binding and meaningless, as he can only act pursuant to those powers delineated in the Code.

{25} Without a quorum of the Board members acting on the MOU, there was no viable OMA claim. *See Trujillo v. Gonzales,* 106 N.M. 620, 621–22, 747 P.2d 915, 916–17 (1987) (stating that the action of two commissioners extending an employment offer to the plaintiff was without statutory authority under Section 10–15–3). In *Trujillo,* the Court held that "the oral promise made by two commissioners, not at a duly constituted meeting of the Board, does not bind the county." *See id.* Similarly, here, there was no vote or action by a quorum of the Board during a public meeting or at any other time regarding the MOU, and Manzanares' action does not bind the Board.

{26} Manzanares' largely unilateral action in negotiating with the Forest Service and executing the MOU did not involve a meeting of a quorum of the Board members. Therefore, the OMA did not apply to the MOU or Manzanares' action. While Manzanares' action may not have been authorized by the law, under the facts of this case, there is no valid OMA claim. The district court did not err in granting summary judgment.

**Denial of Plaintiffs' Motion to File First Amended Complaint**

{27} Plaintiffs appeal the denial of their motion to file a first amended complaint. The "denial of a motion to amend will be reversed only upon a showing of clear abuse of discretion." *Slide–A–Ride of Las Cruces, Inc. v. Citizens Bank of Las Cruces,* 105 N.M. 433, 436, 733 P.2d 1316, 1319 (1987). Under Rule 1–015(A) NMRA, once

an answer has been filed, the decision to allow an amended complaint rests solely within the sound discretion of the trial court. *Schmitz v. Smentowski,* 109 N.M. 386, 390, 785 P.2d 726, 730 (1990); *Vernon Co. v. Reed,* 78 N.M. 554, 555, 434 P.2d 376, 377 (1967). Although the Rule 1–015 expressly states that amendments should be liberally allowed, the "den[ial of] permission to amend is subject to review only for a clear abuse of discretion." *See Vernon Co.,* 78 N.M. at 555, 434 P.2d at 377; *Schmitz,* 109 N.M. at 390, 785 P.2d at 730. "[A]n abuse of discretion is said to occur when the court exceeds the bounds of reason, all the circumstances before it being considered." *Clancy v. Gooding,* 98 N.M. 252, 255, 647 P.2d 885, 888 (Ct.App.1982) (internal quotation marks and citation omitted).

{28} After Plaintiffs filed their complaint, they raised the issue that the MOU may also have violated the Joint Powers Agreements Act, NMSA 1978, §§ 11–1–1 to –7 (1961, as amended through 1999) (JPAA). Eventually, on June 9, 2004, they formally moved to amend their complaint to add the JPAA claims. On appeal, they contend that the MOU is a joint powers agreement and that because the MOU was not approved by the secretary of the finance and administration department, the MOU is void. The Board contends that the MOU is not a joint powers agreement, as it was not executed by the Board in an open meeting, it did not violate the JPAA, and it did not have to be approved by the secretary of the department of finance and administration. We agree with the Board that the denial of Plaintiffs' motion was proper due to the failure of Plaintiffs to provide any sufficient basis for the amendment.

{29} Because the motion to amend to add the JPAA claim was insufficient and futile on its face, granting the motion would have served no purpose. *See State v. Elec. City Supply Co.,* 74 N.M. 295, 299, 393 P.2d 325, 328 (1964). There was no basis for the amendment of Plaintiffs' complaint, and the district court did not abuse its discretion. The JPAA states in relevant part that:

If authorized by their legislative or other governing bodies, two or more public agen-

cies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the contracting parties may be located outside this state; provided, however, nothing contained in this [JPAA] shall authorize any state officer, board, ... to make any agreement without the approval of the secretary of finance and administration as to the terms and conditions thereof.

§ 11–1–3 (citation omitted).

{30} Under the set of facts that were presented to the district court, there was no basis for the JPAA claim. The JPAA was not implicated because, as stated above, the MOU was not approved or authorized by the Board. There was no Board action or approval of the MOU by the secretary of finance and administration, and the MOU is therefore not a joint powers agreement. Given the facts and arguments, the district court did not abuse its discretion in denying Plaintiffs' motion to amend their complaint to add a JPAA claim.

**Denial of Plaintiffs' Motion to Continue and Conduct Additional Discovery and Related Issues**

{31} The district court denied Plaintiffs' motion to conduct additional discovery and to continue. We review discovery orders by a district court for an abuse of discretion. *Hartman v. Texaco Inc.*, 1997–NMCA–032, ¶ 20, 123 N.M. 220, 937 P.2d 979; *see Design Prof'ls Ins. Cos. v. St. Paul Fire & Marine Ins. Co.*, 1997–NMCA–049, ¶ 18, 123 N.M. 398, 940 P.2d 1193 (stating that the district court's ruling on whether to permit further discovery before ruling on summary judgment motion is reviewed for an abuse of discretion). Likewise, we review the district court's denial of Plaintiffs' motion for a continuance for an abuse of discretion. *See Schmider v. Sapir*, 82 N.M. 355, 358, 482 P.2d 58, 61 (1971) ("The granting or denying of continuances is a matter within the sound discretion of the trial court, and such actions will be reviewed only where palpable abuse of discretion is demonstrated.").

{32} Plaintiffs contend that the district court abused its discretion when it ruled on Plaintiffs' motions. First, Plaintiffs argue that the district court was unreasonable, patently unfair, and abused its discretion when it did not permit Plaintiffs to submit a proposed discovery question. This proposed question regarded the individual Board Members' understanding of "why" the MOU was executed. Plaintiffs contend that the question was relevant to the issues of whether the Board entered into the MOU, under what circumstances the Board entered into the MOU, how the MOU was entered into, and whether Manzanares was authorized to act. We disagree with Plaintiffs' contention.

{33} The district court did not abuse its discretion in its ruling. The district court properly ruled that the question as to "why" the MOU was created should not be submitted to the Board. Asking individual board members "why" the MOU was created served no purpose when most of the Board members did not even know of the MOU until after Manzanares had already signed it. The discovery responses support the fact that a quorum of the Board members never took action on the MOU. Therefore, the district court's ruling that Plaintiffs' proposed discovery should not be submitted to the Board was not an abuse of discretion.

{34} Second, Plaintiffs argue that the district court erred in not allowing them to conduct additional discovery and depositions before the hearing on the Board's motion for summary judgment. Plaintiffs also maintain that they should have been granted a continuance. Plaintiffs contend that they needed more time to conduct discovery and that the district court's order prevented them from conducting meaningful discovery at every step of the litigation. Because of this prohibition and refusal to grant a continuance, Plaintiffs assert that they could not effectively counter the Board's motion for summary judgment.

{35} Based on the answers to discovery that were already gathered, additional discovery was unnecessary. The issue regarding the MOU and the OMA did not require a lot of discovery. After the Board and Manzanares answered interrogatories, it was clear to the district court that further discovery would be fruitless given the Board's and

Manzanares' responses. The Board opposed Plaintiffs' motion to conduct additional discovery and depositions because Plaintiffs failed to offer any evidence that a quorum of the Board took any action on the MOU approved and signed by Manzanares.

{36} The statements in the discovery requests establish that most of the Board members were unaware of the MOU prior to its execution by Manzanares. The Board contended that only one Board member, Sauble, had any involvement in the process leading up to the signing of the MOU. All remaining eight individual board members had no involvement in the process leading up to the signing of the MOU. The Board's answers to Plaintiffs' interrogatories made it clear that a quorum did not act on the MOU or even know about it before it was signed. Therefore, a quorum of the Board did not take action on the MOU in violation of the OMA. Allowing additional discovery and depositions would have only prolonged the litigation of a claim that had no merit. The district court did not abuse its discretion in denying Plaintiffs' motion to allow additional discovery.

{37} Nor did the district court abuse its discretion when it denied Plaintiffs' motion for a continuance. As stated above, the answers to the discovery questions established that there were no issues of material fact. Continuing the case would not have changed this. The district court did not err in its ruling.

{38} Third, Plaintiffs contend that the district court erred in granting summary judgment before the deposition transcript of Manzanares was returned pursuant to Rule 1-030(E) NMRA. On June 2, 2004, the district court permitted Plaintiffs to depose Manzanares prior to a hearing on the Board's motion for summary judgment. The district court granted summary judgment on August 18, 2004. Manzanares' deposition transcript was returned on September 14, 2004. Plaintiffs contend that they were not able to use the deposition to further create genuine issues of material fact, and that the district court abused its discretion by rushing to judgment and granting summary judgment without the benefit of the deposition.

{39} This argument has no merit. Based on the discovery statements that were already obtained from Manzanares, there was no need to wait for the deposition transcript. The interrogatories provide the facts to support that the Board did not act on the MOU. These interrogatories provide sufficient, undisputed information that Manzanares acted without the Board's approval in an open or private meeting when he executed the MOU.

{40} Finally, Plaintiffs argue that the district court erred by deeming oral argument unnecessary before granting Defendant's motion for summary judgment. It is within the district court's discretion when considering a motion for summary judgment to hold an oral hearing. *Nat'l Excess Ins. Co. v. Bingham*, 106 N.M. 325, 327, 742 P.2d 537, 539 (Ct.App.1987). We therefore hold that the district court did not abuse its discretion. The issue was fully briefed, and the district court had affidavits, interrogatories, and other documents that were attached to the motion in addition to those included in the court file. With all of this information, the district court deemed oral argument unnecessary.

## CONCLUSION

{41} For the foregoing reasons, we affirm the district court's order of dismissal.

{42} **IT IS SO ORDERED.**

I CONCUR: CELIA FOY CASTILLO, Judge.

RODERICK T. KENNEDY, Judge (specially concurring).

KENNEDY, Judge (specially concurring).

{43} I concur wholeheartedly with the majority in this case, but write separately because I believe this opinion goes farther than the case merits. The United States District Court issued an order for the Forest Service to round up and sell the Laneys' cattle at a livestock auction in New Mexico. The Forest Service, which was obviously not the owner of the cattle, would have to find a way to comply with the New Mexico Livestock Code in order to effect the federal court's order. The federal judgment was a "Foreign Judg-

ment" as defined by NMSA 1978, § 39–4A–2 (1989). However, we do not here address the question as to whether the judgment should have been filed in a New Mexico district court to give it effect for purposes of full faith and credit. *See* U.S. Const. art. IV, § 1; *see also, Walter E. Heller Western, Inc. v. Ditto,* 1998–NMCA–068, ¶ 5, 125 N.M. 226, 959 P.2d 560 ("The rights to execute and levy to enforce a foreign judgment in New Mexico derive from the domestication by a New Mexico district court, not by the grant of judgment by the originating foreign court.").

{44} The Livestock Code's purpose is in part to prevent the "illegal movement of livestock." *See* § 77–2–1. The Code also promotes the control of disease in livestock by requiring inspections, and regulates the ownership, transportation, and sale of animals. No one is allowed to "buy, receive, sell, dispose of or have in his possession any livestock in this state" without executing or possessing a bill of sale. NMSA 1978, § 77–9–21(A) (1993). Possession of any livestock without possessing a bill of sale is presumed illegal possession of the animal under Section 77–9–21(B). Similarly, the operator of a livestock auction is required to pay the proceeds of a sale of cattle only to the owner of the cattle. *See* NMSA 1978, § 77–10–3(E) (1999). Under the Code, there exists a well-delineated procedure for the impoundment and disposition of trespassing cattle. *See*

NMSA 1978, §§ 77–14–1 to –36 (1901, as amended through 1999). The federal court's order required many of these provisions to be bent or ignored for its judgment to be effected.

{45} Potentially, the federal court's order required some accommodation by New Mexico if the Forest Service was to round up and sell the Laneys' cattle. The cattle would bear the Laneys' brand. The cattle would presumably not be accompanied by a bill of sale authorizing their possession by the Forest Service but rather a copy of a federal court's order—something not contemplated as a document of title under the Code. For the Director of the Board to agree to procedures outside of the Code to effect the federal court order is ultra vires and therefore not covered by the OMA. That the cattle were rounded up and sold (we surmise) according to the federal order renders the matter moot. I do not see broader policy implications to this case as presented to us or a likelihood that this situation will be so common as to justify our going beyond the mootness to delve further into the merits, although the majority is correct in their analysis.