This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**JAMES BUFORD HARRIS, III**

Plaintiff/Counter-Defendant,

v.                                              NO. A-1-CA-34701

**NELL GRAHAM SALE, ESQ., and**
**MILLER STRATVERT, PA,**

Defendants/Counter-Claimants/Third-Party Plaintiffs-Appellants,

v.

**ROBERT ADRON HARRIS,**
**SHARLENE HARRIS MARTINEZ,**

Third-Party Defendants-Appellees,

and

**ARLYN KRIEGEL, CPA**
**LAWRENCE M. PICKETT, ESQ.,**
**and THE PICKETT LAW FIRM, LLC,**

Third-Party Defendants.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Jerry H. Ritter Jr., District Judge**

McClaugherty & Silver, P.C.

Joe L. McClaugherty
Jere Kathryn Smith
Santa Fe, NM

for Appellants

Law Office of Daymon Ely
Daymon B. Ely
Albuquerque, NM

Law Office of Roger Eaton
Roger Eaton
Albuquerque, NM

for Appellees

## MEMORANDUM OPINION

**VARGAS, Judge.**

{1}    Defendants Miller Stratvert, P.A. and Nell Graham Sale (collectively, Miller Parties), appeal the district court's order entering summary judgment on their third-party indemnification claim against their former clients and sanctioning the Miller Parties for bringing a claim the district court found to be "without support either factually or as a matter of law, . . . plainly frivolous and brought in bad faith." Because the Miller Parties failed to produce any evidence that their former clients were actively involved in the alleged negligence for which the Miller Parties sought indemnification and because the district court did not abuse its discretion in awarding sanctions to the third-party defendants, we affirm.

2

**BACKGROUND**

{2}    This case centers on disputes arising from the distribution of the Estate of Jimmy Harris (Estate), who owned interests in farmlands throughout New Mexico. Married three times, Jimmy Harris (Jimmy) had four children: James Buford Harris, III (Buford) and Sharlene Harris Martinez (Sharlene) with his first wife and Heather and Jamie with his second wife. In 1996, Jimmy created the James B. Harris, Jr. Revocable Trust (the Trust), transferred various real estate parcels to the Trust, named himself trustee, and named his brother Robert Adron Harris (Adron), his son Buford, and his daughter Sharlene as successor co-trustees. Miller Stratvert, P.A., prepared the Trust documents for Jimmy.

{3}    On May 1, 2005, Jimmy slipped into a coma, from which he did not recover. Due to Jimmy's incapacity, Buford, Adron and Sharlene took over as successor co-trustees of the Trust. On May 3, 2005, after being contacted by Buford to inquire about Jimmy's estate planning documents, Nell Graham Sale, an employee of Miller Stratvert, P.A., recommended to the successor co-trustees numerous changes to Harris's Trust, including the creation of several limited liability companies and the transfer of assets into those LLCs, which were implemented prior to Jimmy's death. After Jimmy died on May 5, 2005, Miller represented the Estate as well as the successor co-trustees, Adron, Buford, and Sharlene, in matters relating to the Trust.

3

{4}    According to Buford, following Jimmy's death, the Trust and newly-formed LLCs were run largely in accordance with Miller's advice and counsel, which resulted in disputes and ill-will among the Trust beneficiaries related to the management of the Trust and its assets. The disputes were ultimately mediated, however, and the family reached an agreement regarding the distribution of the Trust assets.

{5}    Following the resolution of the disputes over the Trust assets, Buford, acting in his capacity as beneficiary of the Trust, filed suit against the Miller Parties alleging claims for legal malpractice and breach of fiduciary duties, alleging that the Miller Parties failed to properly advise him and failed to properly protect his interests as a beneficiary of the Trust. Miller filed an answer and counterclaim, as well as a third-party complaint against the other successor co-trustees, Adron and Sharlene,[1] seeking indemnification for any potential liability the Miller Parties would have for Buford's claims based on an agency theory. Adron and Sharlene filed a motion for summary judgment. The district court granted Adron's and Sharlene's motion, finding the Miller Parties' complaint to be so "vexatious" as to warrant awarding Adron and Sharlene their attorney fees as a sanction. The Miller Parties now appeal.

---

[1]Buford also filed claims against his personal attorney, the personal attorney's firm, and the family accountant, but those claims were resolved and are not part of this appeal.

4

**DISCUSSION**

**{6}** The Miller Parties raise two issues on appeal. First, they claim that the district court erred when it entered summary judgment in favor of Adron and Sharlene because, as agents of the successor co-trustees, they are entitled to indemnification from their principals. Second, the Miller Parties argue that the district court abused its discretion when it sanctioned the Miller Parties $87,167.26—the amount of Adron's and Sharlene's attorney fees—for raising a claim the district court concluded lacked factual and legal support, was frivolous, and brought in bad faith.

**Summary Judgment Was Properly Granted**

**{7}** "Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Bank of N.Y. Mellon v. Lopes*, 2014-NMCA-097, ¶ 6, 336 P.3d 443 (internal quotation marks and citation omitted). "We review issues of law de novo." *Id.* "We are mindful that summary judgment is a drastic remedial tool which demands the exercise of caution in its application, and we review the record in the light most favorable to support a trial on the merits." *Woodhull v. Meinel*, 2009-NMCA-015, ¶ 7, 145 N.M. 533, 202 P.3d 126 (internal quotation marks and citation omitted). "The movant for summary judgment may establish a prima facie case . . . if, through discovery, it appears the party opposing the judgment cannot factually

establish an essential element of his or her case." *Paragon Found., Inc. v. N.M. Livestock Bd.*, 2006-NMCA-004, ¶ 11, 138 N.M. 761, 126 P.3d 577.

**Indemnification in New Mexico**

{8} "[T]raditional indemnification is a judicially created common-law right that grants to one who is held liable an all-or-nothing right of recovery from a third party[.]"*In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶ 7, 119 N.M. 542, 893 P.2d 438. "A right to indemnification is based in equity[,]" *Budget Rent-a-Car Sys., Inc. v. Bridgestone*, 2009 NMCA-013, ¶ 12, 145 N.M. 623, 203 P.3d 154, and allows "a party who has been held liable for a wrong but whose conduct in causing the harm was 'passive' [to] recover from a party who was 'actively' at fault in causing the harm." *Id.*

{9} A right to indemnification may arise "through vicarious or derivative liability . . . or when a person is directed by another to do something that appears innocent, but is in fact wrongful." *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶ 9; *see also Otero v. Jordan Rest. Enters.*, 1996-NMSC-047, ¶ 14, 122 N.M. 187, 922 P.2d 569 (stating, "one held vicariously liable has an action for traditional indemnification against the person whose act or omission gave rise to the vicarious liability") However, "[b]ecause recovery under traditional indemnification requires at least one active tortfeasor and one passive

6

concurrent tortfeasor, the remedy only applies in a limited number of tort cases premised on vicarious or derivative liability." *Safeway*, 2016-NMSC-009, ¶ 28.

{10} To determine a party's liability for a traditional indemnification claim, our Supreme Court adopted the test set out in Restatement (Third) of Torts: Apportionment Liability § 22 (Am. Law Inst. 2018), which provides, in relevant part:

> (a) When two or more persons are or may be liable for the same harm and one of them discharges the liability of another in whole or in part by settlement or discharge of judgment, the person discharging the liability is entitled to recover indemnity in the amount paid to the plaintiff, plus reasonable legal expenses, if:
>
> (1) the indemnitor has agreed by contract to indemnify the indemnitee, or
>
> (2) the indemnitee
>
> (i) was not liable except vicariously for the tort of the indemnitor[.]

*See Safeway*, 2016-NMSC-009, ¶ 33. The indemnitee has the burden to "prove that the indemnitor would have been liable to the plaintiff in an amount equal to or greater than the amount the indemnitee seeks." Restatement (Third) of Torts § 22, cmt. c. Section 22 of the Restatement, the Supreme Court reasoned, is consistent with our jurisprudence on indemnification. *Safeway*, 2016-NMSC-009, ¶ 28; *see also In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶ 9 (recognizing a right to indemnification through vicarious or derivative liability "or

when a person is directed by another to do something that appears innocent, but is in fact, wrongful").

**The Miller Parties' Indemnification Claim**

{11}     Applying the test set out in Restatement (Third) of Torts § 22(a)(1)(i), we conclude that the Miller Parties are not entitled to indemnification from Adron and Sharlene because they cannot show that Adron and Sharlene engaged in conduct that would have rendered them liable to Buford. *In re Consol. Vista Hills Retaining Wall Litig.*, 1995-NMSC-020, ¶¶ 9, 10; *see also* Restatement (Third) of Torts § 22, cmt. c. The Miller Parties' indemnification claim is "premised on vicarious liability and the principal/agent relationship between [Adron and Sharlene] and [the] Miller [Parties]" and "is intended only to avoid liability *for the acts of* [Adron and Sharlene]." (Emphasis added.) The Miller Parties argue that it is Adron and Sharlene as the co-trustees, not the Miller Parties, who owed direct duties of care to properly administer the Trust for the benefit of Buford and other beneficiaries. Buford's remedy, they reason, was against Adron and Sharlene, not the Miller Parties. We do not agree.

{12}     Notwithstanding their claims that their right to indemnification was based on "*the acts of* [Adron and Sharlene]," the Miller Parties failed to identify any wrongful conduct on the part of Adron and Sharlene that would have made them liable to Buford. *See Safeway*, 2016-NMSC-009, ¶ 17 (stating traditional

8

indemnification is designed to "ensure that the most culpable party, *as between two wrongdoers,* bore the ultimate loss." (emphasis added)). Instead, in response to the motion for summary judgment, the Miller Parties set forth fifty-eight paragraphs of their own "undisputed material facts," and provided 278 pages of exhibits, setting out the history of the negotiation and distribution of the Trust following Jimmy's death. While the Miller Parties' undisputed material facts detail discussions between the Miller Parties, the co-trustees and others about the manner in which the Trust should be distributed, how estate taxes would be paid and how complaints from Trust beneficiaries should be addressed and resolved, the Miller Parties' evidence opposing summary judgment does not identify any wrongful conduct or breach on the part of Adron and Sharlene of their duties as co-trustees of the Trust that would render them liable to Buford.

{13}    Included among its exhibits tendered in opposition to summary judgment was an affidavit of attorney Richard Barlow purporting to "offer opinions related to the standard of care and conduct applicable to an attorney practicing in the areas of estate planning, estate tax law, trust administration . . . related tax aspects . . . [and] duties owed to an attorney by trustee clients." While Barlow provided extensive testimony about the general duties of trustees, he failed to identify any specific acts or failures to act on the part of Adron and Sharlene that constituted wrongful conduct or a breach of their duties as trustees. Nevertheless, he

9

concluded, "there is evidence from which a jury should conclude that duties of care owed to the Miller [Parties] by [Adron and Sharlene] were breached by [Adron and Sharlene] and that either the Miller [Parties] have no liability and/or that the Miller [Parties] are entitled to be fully indemnified for any damages," without offering any support or explanation. At no time did the Barlow affidavit address whether Adron and Sharlene had engaged in wrongful conduct or breached their duties as trustees to Buford as a beneficiary of the Trust—the allegation on which the Miller Parties relied for their claim of indemnification.

**{14}** While the Miller Parties' undisputed material facts contained some allegations of Adron's and Sharlene's reluctance to share certain information about the Estate with some of the beneficiaries, contrary to their duties as trustees, the Miller Parties conceded that Adron and Sharlene did not make any negligent or intentional material misrepresentations to the Miller Parties, did not give the Miller Parties any instructions that made it more difficult for the Miller Parties to represent the Estate, did not approve, ratify, acquiesce to or participate in any wrongful conduct and were good trustees. Absent evidence that Adron and Sharlene "personally participated in an affirmative act of negligence, [were] connected with the negligent acts or omissions by knowledge or acquiescence, or . . . failed to perform a precise duty [they had] a duty to perform," *Safeway*, 2016-NMSC-009, ¶ 15 (alteration, internal quotation marks, and citation omitted),

10

or were otherwise liable to Buford, Restatement (Third) of Torts § 22, cmt. c (2000), the Miller Parties did not satisfy their burden to show that a genuine issue of material fact existed for trial, and the district court properly granted summary judgment. *See Bank of N.Y. Mellon*, 2014-NMCA-097, ¶ 6 ("Summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to a judgment as a matter of law.")

{15}    Furthermore, it is clear that the claims raised by Buford against the Miller Parties were not based on the Miller Parties' indirect or passive conduct, entitling them to indemnification, *see Safeway*, 2016-NMSC-009, ¶ 15, but instead were addressed to the Miller Parties' active conduct of rendering legal advice that fell below the standard of care. Buford's malpractice claims against the Miller Parties can be grouped into three general categories: (1) the Miller Parties failed to disclose and adequately address conflicts of interest between Buford and other parties, resulting in their failure to adequately protect Buford's interests; (2) the Miller Parties failed to properly advise Buford about a potential individual claim he may have had against the Estate related to his parents' 1970 Marital Settlement Agreement; and (3) the Miller Parties gave Buford such poor advice that it subjected Buford to liability to other Trust beneficiaries and forced him to give up valuable property rights to settle claims threatened as a result of that advice.

11

{16} Buford's claims focus on the Miller Parties' alleged malpractice associated with advice Buford asserts fell below the standard of care, rather than any wrongful conduct on the part of Adron and Sharlene. It would be inappropriate to allow the Miller Parties to recover damages for indemnification based on their own malpractice.

{17} Finally, we note that the Miller Parties allege that the district court erred when it granted Adron's and Sharlene's motion to strike their fifty-eight paragraphs of undisputed facts and the Barlow affidavit. The district court concluded that the Miller Parties' "statement of undisputed facts did not meet the issues raised," and "the affidavit of Richard K. Barlow, expert witness for [the Miller Parties] failed to establish the existence of any genuine issues of fact for trial meeting the requirements of Rule 1-056, NMRA." Because the district court clearly considered and we, in turn, considered, the Miller Parties' undisputed facts and the Barlow affidavit in reaching our conclusion that the Miller Parties failed to establish a genuine issue of material fact for trial, we need not address whether the district court abused its discretion when it granted Adron's and Sharlene's motion.

**The District Court's Sanction Award**

{18} Next, the Miller Parties challenge the district court's award of sanctions, claiming the award was inappropriate because the Miller Parties were not liable to Buford and they are entitled to indemnification, the award was excessive and

12

punitive, and the award will have a chilling effect on lawyers' zealous representation of their clients. Finally, the Miller Parties ask us to hold that a district court may impose sanctions against a lawyer for pursuit of a meritless claim only after finding that the lawyer knew or should have known that the claim was meritless and that the lawyer had an improper purpose for doing so. We are not persuaded by any of the Miller Parties' arguments. We decline to limit the district court's inherent authority to impose sanctions as requested, and affirm the district court's sanction award.

**{19}** "[M]eritless actions abuse the judicial process and impose enormous burdens on the courts and parties who must defend such claims." *Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 16, 145 N.M. 372, 198 P.3d 871. A court has inherent authority to "award attorney[] fees in order to vindicate its judicial authority and compensate the prevailing party for expenses incurred as a result of frivolous or vexatious litigation." *State ex rel. N.M. State Highway & Transp. Dep't v. Baca*, 1995-NMSC-033, ¶ 12, 120 N.M. 1, 896 P.2d 1148. "[A] court's inherent authority extends to all conduct before that court and encompasses orders intended and reasonably designed to regulate the court's docket, promote judicial efficiency, and deter frivolous filings." *Id.* ¶27. These powers, however, "are not unfettered and should be invoked sparingly and with circumspection." *Harrison v. Bd. of Regents of Univ. of N.M.*, 2013-NMCA-105, ¶ 26, 311 P.3d

13

1236 (internal quotation marks and citations omitted). We review an award of sanctions, as well as an award of attorney fees under the court's inherent powers for an abuse of discretion. *Landess*, 2008-NMCA-159, ¶ 16. An abuse of discretion exists where a "ruling is clearly against the logic and effect of the facts and circumstances of the case." *State v. Bailey*, 2017-NMSC-001, ¶ 12, 386 P.3d 1007 (internal quotation marks and citation omitted).

{20} The district court found that the Miller Parties filed their claim for indemnification against Adron and Sharlene "without any reasonable belief that they could establish or support a claim for indemnity," pointing to the depositions of the Miller Parties as evidence that they "knew or should have known that their claims for indemnity. . . lacked a basis in fact from the time of filing onward." Based on these findings, the district court concluded that the Miller Parties' "claims, being without support either factually or as a matter of law, were plainly frivolous and brought in bad faith and caused [Adron and Sharlene] to needlessly bear the burden of meritless litigation."

{21} Initially, the Miller Parties claim that the court's sanctions were inappropriate because they were not liable to Buford and they are entitled to indemnification. We interpret this argument as a challenge to the district court's finding that its indemnification claim was meritless. We have previously addressed the Miller Parties failure to provide any evidence to establish a genuine issue of

14

material fact that they were merely passive participants in the conduct that forms the basis of Buford's malpractice complaint and were therefore only vicariously liable for any damages claimed by Buford. Indeed, the district court supported its finding, pointing to the deposition testimony of the Miller Parties, which conceded that Adron and Sharlene had not engaged in any wrongful conduct and were good trustees. The district court properly concluded that the Miller Parties' indemnification claim was meritless.

{22}     The Miller Parties next argue that the district court's award was excessive and punitive, claiming that the legal work performed by Adron's and Sharlene's attorney was unnecessary, and they could have sought indemnification for their attorney fees from Buford based on a contractual agreement between the co-trustees. Though not entirely clear, the Miller Parties appear to argue that the district court's award of costs and attorney fees were not reasonable because Adron and Sharlene should have raised the shortcomings of their indemnity claim "immediately upon filing of the [Miller Parties'] Third Party Complaint" for indemnification. We are not persuaded.

{23}     The Miller Parties filed their third-party complaint in July 2010 alleging that Adron and Sharlene had "approved of, ratified, acquiesced and participated in the alleged wrongful conduct and transactions of which Buford is complaining" and are therefore "secondarily liable to the Miller [Parties] for the harm caused by their

15

negligent and/or intentional material misrepresentations, directions and instructions to Sale[.]" Four years later, after significant discovery and motion practice, the district court granted Adron's and Sharlene's motion for summary judgment and awarded the sanctions at issue. The district court found in its order that the attorney fees and costs it awarded were "solely related to defense against [the Miller Parties'] claims" and "were reasonable and necessary for defense of [the Miller Parties'] claims." *See Rivera v. Brazos Lodge Corp.*, 1991-NMSC-030, ¶ 22, 111 N.M. 670, 808 P.2d 955 (stating that "the district court should state the basis for the amount of sanctions awarded, including whether the hours actually spent reasonably were necessary under the circumstances")

**{24}** Following extensive briefing and argument on Adron's and Sharlene's motion for summary judgment and request for sanctions, the district court found that the Miller Parties "instigated this civil suit against [Adron and Sharlene] without a reasonable belief, founded on known facts established after reasonable pre-filing investigation, that the claim could be established to the satisfaction of a court or jury." We are satisfied that the district court properly considered the "factual and legal bases available to [the Miller Parties] before the claim was filed," including the Miller Parties' testimony that Adron and Sharlene had not engaged in wrongful conduct and were good trustees. *See Rivera*, 1991-NMSC-030, ¶ 22 (stating that the district court "should inquire into, and make relevant

16

findings regarding factual and legal bases available to [a plaintiff] before the claim was filed")

{25}    Finally, the Miller Parties' argument that the district court's sanction award is excessive and should have been denied because Adron and Sharlene could have sought indemnification for their attorney fees from Buford ignores the purpose of sanctions. "[S]anctions are punitive by their very nature" and "necessarily include some degree of punishment and deterrence for the wrongful party." *Harrison*, 2013-NMCA-105, ¶ 24. Relieving the Miller Parties of their sanctions because Adron and Sharlene could have recovered their fees elsewhere defeats the court's intended purpose to punish them for filing a meritless claim and deter them from future vexatious litigation. *See id.* We find no abuse of discretion in the district court's award of attorney fees and costs. *Landess v. Gardner Turf Grass, Inc.*, 2008-NMCA-159, ¶ 16, 145 N.M. 372, 198 P.3d 871.

{26}    Lastly, the Miller Parties argue that the award will have a chilling effect on lawyers' zealous representation of their clients. They encourage us to adopt a rule that limits a district court's inherent authority to impose sanctions against a lawyer for pursuit of a meritless claim only after finding that the lawyer knew or should have known that the claim was meritless and that the lawyer had an improper purpose for doing so. We decline to adopt such a rule. The Miller Parties' request would preclude a district court from imposing sanctions on lawyers who failed to

17

perform their jobs with diligence or competence and thwart its authority to prevent abusive litigation practices and preserve the integrity of the judicial process. *See Harrison,* 2013-NMCA-105, ¶ 24.

**CONCLUSION**

{27} We affirm the district court.

_____
**JULIE J. VARGAS, Judge**

**I CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

**VANZI, Chief Judge (concurs in result only).**